[Civ. No. 16206.    Second Dist., Div. Three.    Oct. 30, 1948.]

W. C. DALZELL, Appellant, v. COUNTY OF LOS ANGELES et al., Respondents.

W. C. Dalzell, in pro. per., for Appellant.

Harold W. Kennedy, County Counsel, and Ernest Purdum, Deputy County Counsel, for Respondents.

WOOD, J.—This is an action to recover damages for injuries sustained by plaintiff when he drove his automobile into an open storm drain during a dense fog. Judgment was for defendants. The trial court found that there was no dangerous or defective condition of the highway where plaintiff was injured; and that any injury sustained by plaintiff was caused by his own fault in that he so negligently managed his automobile that as a direct and proximate result thereof he drove it into a storm drain. The court stated, in the conclusions of law, that the injury described in plaintiff's complaint was caused by his own contributory negligence. Plaintiff appeals from the judgment.

The accident occurred on November 19, 1943, about 5:45 a. m., near the northwest corner of the intersection of Paloma

Street and Sierra Madre Boulevard in Los Angeles County. Paloma Street extends east and west, and Sierra Madre Boulevard extends north and south. Paloma Street is about 45 feet wide at the east entrance to the intersection and about 40 feet wide at the west entrance thereof, is paved with macadam, and has no marked traffic lanes. Sierra Madre Boulevard is about 150 feet wide at the north entrance to the intersection and about 125 feet wide at the south entrance thereof. In the center of that boulevard there is a railway right-of-way about 70 feet wide, and in the right-of-way there are two railway tracks. On each side of the right-of-way there is a paved highway about 40 feet wide. The right-of-way is not paved north and south of the intersection but it is paved in the intersection. The surface of the right-of-way within the intersection is level with the pavement in the intersection, and the ''parking'' or unimproved surface of the right-of-way north of the intersection is several inches higher than the adjoining highway pavement. An underground storm drain or culvert extends across Sierra Madre Boulevard near the north line of the intersection. At the west side of Sierra Madre Boulevard, there is an open rectangular concrete inlet to the culvert. At the east side of the boulevard there is an open rectangular concrete outlet to the culvert. The concrete inlet (on the west side of the boulevard) is about 6 feet wide and 4 feet deep at its east end where it adjoins the culvert, and about 8 feet wide at its west end, and is about 10 feet long. There is a berm or raised shoulder on the west side of Sierra Madre Boulevard and north of the intersection. It is about 1 foot wide and about 8 inches high at the outer edge. It extends several feet north from Paloma Street and is about 1 foot from the southeast corner of the storm drain inlet and about 10 feet from the northeast corner of the inlet. There was dry grass in the triangular area between the berm of the pavement and the east end of the inlet. A white post, approximately 1 foot in diameter and 3½ feet in height, adjoins the southeast corner of the inlet, and a similar post adjoins the southwest corner of the inlet. The pavement of the intersection and Paloma Street is about 1 foot from these posts. At the time of the accident, there was no post or other protective device at the east end of the inlet, or at the northeast corner or the north side of the inlet.

Plaintiff testified that he left his home about 5:15 a. m. on the day of the accident and went in his automobile to a pasture about one-half mile east of Sierra Madre Boulevard

where he milked a cow; that he encountered very little fog on his way to the pasture; that he left the pasture to return home about 5:40 a. m.; that it was "pitch dark" at that time, and a heavy fog had drifted into the area; that he proceeded west on Paloma Street; that he was driving very slowly on account of the fog and also because he had an open bucket of milk in the back of his automobile; that he followed the north edge of the pavement on Paloma Street until he came to the storm drain outlet on the northeast corner of the intersection; that he then "followed the angle of the northeast storm drain," started across the east half of the intersection, and ran against the "parking in the middle of the street [the railway right-of-way] approximately 10 or 15 feet north of the line where Paloma Street crosses" the tracks; that after "straightening up," he turned southerly and followed the "parking in the middle of the street" to its southern edge, then turned westerly and followed the southern edge of said "parking" to the point where "it curves off to the north"; that from that point he had nothing to guide him, and he drove westerly as straight as he could; that he reached the point east of the storm drain inlet where there was dry grass between the pavement and the east end of the inlet and, before he realized what had happened or where he was, the right wheels of his automobile "rode" on the north wall of the storm drain inlet and his automobile turned over on its left side and fell into the inlet; and that during all of this time his automobile headlights were on. He testified further that he milked the cow twice daily, and that from April, 1943, to November 19, 1943 (the day of the accident) he had driven across the intersection four times each day; that the first time he had driven in fog across the intersection was the day of the accident; that he was familiar in general with the physical arrangement of the intersection, but he was not familiar with the exact directions of the north line of the street.

It was stipulated by the parties that a Mr. Morse would testify that he was driving west on Paloma Street about 5:45 a. m. on the day of the accident; that there was a very heavy fog at the intersection at that time; that he noticed an automobile in the "storm drain," and found plaintiff trying to get out of the automobile which was on its left side in the storm drain inlet; and that he (the witness) took the plaintiff home.

Plaintiff contends that the open storm drain inlet constituted a defective and dangerous condition within the

meaning of section 2 of Act 5619 of the General Laws of California (Stats. 1923, ch. 328, p. 675). Under that section a county is liable for injuries resulting from the dangerous or defective condition of highways in cases where the governing board of the county had notice of such condition. It was stipulated at the trial that the storm drain was in the same condition on the day of the accident that it was when it was built by the county and that the governing body of the county had notice of the condition. At the close of the testimony on behalf of plaintiff, the plaintiff suggested that the trial judge view the scene of the accident. The judge then said: ''When we have concluded the evidence I think we will probably go out there and take a look at it.'' The record does not show whether the judge viewed the scene of the accident, and since the statement of the judge as to whether he would view the scene was uncertain, it will not be assumed that he did view it. The photographs and the map of the scene of the accident, which were received as exhibits, and the other evidence regarding the description of the highway and the storm drain, show that the storm drain inlet was a dangerous condition of the highway. The evidence does not support the finding that it was not a dangerous or defective condition. The storm drain inlet, as above shown, was close to the pavement of both highways and there was no guard post or rail or other protective device at the east end of the inlet.

As above stated, the trial court found that any injury sustained by plaintiff was caused by the negligence of the plaintiff himself in that he so carelessly managed his automobile that as a direct and proximate result thereof he drove it into the storm drain. Although the court did not expressly state in that finding that plaintiff was guilty of contributory negligence, such a finding necessarily included a finding that negligence on the part of plaintiff directly and proximately contributed to the injury. There was substantial evidence to support a finding of contributory negligence on the part of plaintiff. As above shown, the plaintiff had driven across the intersection four times a day for a period of about seven months previous to the accident and he was familiar with the physical arrangement of the intersection. He was aware that he was proceeding near the south edge of the storm drain outlet (east of the intersection) before he started into the intersection, and apparently it was his intention, in order to keep off the south side of Paloma Street, to cross the intersection by proceeding straight ahead in line with his starting

position (near the edge of the storm drain outlet) and thereby to keep as near as possible to the north line of the intersection. Before he had gone half way across the intersection, and at the time he ran against the raised part of the railway right-of-way, he knew that he had veered far from his intended course, and that he was out of the intersection and north of it several feet. He returned to the intersection, from his position against the right-of-way, by ''following'' the raised edge of the unimproved part of the right-of-way. Then, he crossed the railway tracks and continued to cross the intersection, ''following'' the raised edge of the right-of-way until it curved to the north. Then, in endeavoring to cross the remainder of the intersection, when he ''had no guide whatsoever,'' he took no precautionary measure other than to drive ''as near straight'' as he could. In other words, it appears that he attempted to drive across the last part of the intersection, relying solely on his alleged ability to drive straight in fog. As above shown, he had just experienced failure in the first part of the intersection when he relied solely on his ability to drive straight. If, from his position in the driver's seat, he could not see where he was about to drive, it was his duty to ascertain the surrounding conditions in some other manner. In the case of *Keene* v. *Pacific Northwest Traction Co.,* 153 Wash. 310 [279 P. 756, 757] the court said at page 313: ''There was, it is true, a fog, at the time, which more or less obscured his vision, but this, instead of excusing him from exercising care and caution, rather added to his duty in that respect. If he could not see whether or not he was entering a zone of danger in venturing onto the railway track, it was his duty to take some other means of ascertaining the fact. He could not . . . take a chance on escaping injury, and, failing to escape, charge his delinquency to another.'' ■ In driving an automobile in fog, the driver is required to exercise a degree of care that is to be expected of an ordinarily prudent person under the same or similar circumstances. In the case of *Salera* v. *Schroeder,* 183 Minn. 478 [237 N.W. 180], wherein the defendant was driving in fog, the court said at page 480: ''Extreme caution was required by the circumstance of the moment—a degree of caution commensurate to the danger, which was great. . . . It is but ordinary prudence to exercise a high degree of care in the presence of imminent danger, when casualty is apt to come unless much care is exerted to avoid it.'' In *Devoto* v. *United Auto Transportation Co.,* 128 Wash. 604 [223 P. 1050, 1052], it was said at pages 609-10: ''[T]hat, in driving

through a fog bank, each driver must do so in a careful and prudent manner with due regard for the safety of others, and what is careful and prudent under the particular conditions shown will usually be a question for the jury.''

In determining whether plaintiff herein was negligent, some of the questions of fact related to (1) how far plaintiff could see in the fog, (2) whether he should have seen the white posts on the south side of the storm drain inlet, (3) what rate of speed he was traveling, and (4) whether, in driving over the raised shoulder or 8-inch berm and the dry grass on the west side of Sierra Madre Boulevard, he should have become aware that he was driving off the highway. His statement that he was ''following'' the edge of the right-of-way indicates that he could see that edge (which was beyond the right side of his automobile), and therefore that he ·could see in the fog for a distance of several feet. On the other hand, his statement that since he ''had no guide whatsoever'' (after he had passed the edge of the right-of-way) and that he drove westerly as straight as he could indicates that the fog was so dense that he could not see any distance in it. His statement that he drove as straight as he could implies that he was looking ahead while he was trying to drive straight. Since the white posts, which were about 3½ feet high and 1 foot in diameter, adjoined the south side of the inlet, it is reasonable to assume that the posts were within the area covered by the headlights of his automobile as he approached the east end of the inlet. If he looked ahead while he was driving straight, it might reasonably have been concluded that he should have seen the posts which were a warning of danger. It appears, however, from plaintiff's brief that he did not look ahead while he was trying to drive straight. In his brief he states as follows: ''Further, plaintiff necessarily was closely watching to the northwest for reappearance of street north side lines and obviously was not and should not at that time look directly west or southwest to locate such posts. If a post had been so placed at the northeast corner of the storm drain plaintiff would have seen it . . ..'' It is also to be noted, as above stated, that the northeast corner of the drain was about 6 feet from the post at the southeast corner of the drain. The raised shoulder or berm at the west side of Sierra Madre Boulevard was 8 inches high and about 1 foot wide. If plaintiff drove very slowly (about 5 miles per hour as stated in his brief) when his automobile went over such a ridge on the highway, it might reasonably have been

concluded that he should have known that he was off the high-way which he had traversed so frequently for several months. Also, if plaintiff drove slowly when the right wheels of his automobile traveled upon dry grass for a distance of 10 feet after crossing the berm, it might reasonably have been concluded that he should have known that he was off the highway. Also, the trial court was confronted with the matter of trying to reconcile testimony as to slow speed with testimony that plaintiff, before he realized where he was, had gone over the berm and the dry grass, and that the right wheels of the automobile ''rode'' on the north wall of the inlet and the automobile fell on its left side into the hole. It is not clear how a slow-moving automobile could proceed so far over the open 6-foot-wide hole that its right wheels would be upon the north wall before the automobile fell. Whether or not there was contributory negligence on the part of plaintiff was a question of fact for the trial court, and, as above stated, the evidence was sufficient to support such finding.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied November 19, 1948, and appellant's petition for a hearing by the Supreme Court was denied December 27, 1948.