[Civ. No. 20500. First Dist., Div. One. Dec. 12, 1962.]

MARJORIE D. LINDNER, Plaintiff and Appellant, v. BAR-
LOW, DAVIS & WOOD et al., Defendants and Re-
spondents.

Leslie L. Roos and Roos, Jennings & Haid for Plaintiff and Appellant.

Willard S. Johnston and Ackerman, Johnston, Johnston & Mathews for Defendants and Respondents.

BRAY, P. J.—Plaintiff appeals from an adverse judgment in a nonjury trial, in an action for alleged malpractice by defendants.

## QUESTIONS PRESENTED

1. Sufficiency of findings and evidence to support them.

2. Was plaintiff's examination of defendant Wood improperly restricted?

## EVIDENCE

Plaintiff is the widow of Clarence Lindner who died in January, 1952. Defendants are certified public accountants, engaged in the practice of accounting, including tax phases thereof. From time to time, since before 1948, defendants

were employed by Clarence Lindner and plaintiff to prepare federal and California income tax returns, income tax estimates, and to do related accounting work as requested.

For many years Lindner had been and at the time of death was publisher of the San Francisco Examiner; director and vice president of Hearst Publishing Company, Inc., the owner of the Examiner; and director and vice president of Hearst Consolidated Publications, Inc., the owner of all the stock of Hearst Publishing Company, Inc.

For a period of approximately five years commencing in about March 1952, Hearst Publishing Company, Inc. (hereinafter called Hearst) paid plaintiff certain monies in weekly installments pursuant to and in accordance with a resolution of its board of directors. These payments were made after deducting United States income tax withheld by Hearst, and by it remitted to the government.

The payments were made pursuant to and as part of a plan, practice, custom and policy of Hearst to make payments to widows of deceased publishers and certain lesser executives who had rendered long and faithful service. This practice was known to Lindner during his lifetime. He and Hearst contemplated that if he remained faithfully in Hearst's employment and service, his widow would receive such payments.

In March, 1952, Garrett McEnerney, of the law firm of McEnerney & Jacobs, Hearst's attorney, who was also attorney for plaintiff as executrix of her husband's will and for her individually in all matters arising out of his death, informed plaintiff that Hearst would make such payments, subject to Hearst's obligation to withhold federal income taxes thereon on the grounds that they constituted taxable income to plaintiff; at about that time plaintiff received a copy of the above mentioned resolution.

In April 1952, plaintiff told defendant Wood that she was to receive payments from Hearst, that McEnerney had advised her that Hearst would withhold taxes thereon, and that Wood should speak to Attorney Haile, an employee of McEnerney & Jacobs. Wood was informed by Haile that Hearst would withhold the taxes. Wood so informed plaintiff.

There is a conflict in the testimony of plaintiff and Wood as to whether plaintiff protested to Wood that the payments should not constitute taxable income.

In February 1953, Hearst issued a withholding statement (W-2 form) and McEnerney & Jacobs forwarded it to plaintiff. This showed the belief of plaintiff's counsel that said

weekly payments made in 1952 were taxable, and showed the withholding and payment by Hearst of plaintiff's federal income taxes thereon. In April 1952, defendants prepared an amended estimate of plaintiff's 1952 income tax and in April 1953, defendants prepared plaintiff's 1952 income tax return with the withholding statement attached. The latter was accompanied by defendants' written statement to plaintiff that said return was based upon records and information not independently verified by them. Both statements showed the Hearst payments as taxable income and were signed and filed by plaintiff without comment. In the years 1954 through 1957, Hearst sent plaintiff similar withholding statements. She in turn sent them to defendants, who prepared each year's returns showing the payments as taxable income. Each return was accompanied by a written statement to the effect that such return was based upon information not independently verified by defendants. Each was siged and filed by plaintiff without comment.

In April 1957, plaintiff read of a tax court decision holding that corporation payments to the widow of a deceased executive were not taxable. She then consulted with lawyers who filed for her claims for refund of the federal income taxes paid on account of the Hearst payments for the years 1954, 1955 and 1956. The claims were denied. Suit was then filed thereon and in November 1958, the suit was settled by the refund to plaintiff of all of said taxes plus interest. Thereafter, plaintiff obtained administrative refund of the California income taxes paid for the years 1953 to 1956, inclusive.

March 13, 1959, this action was commenced. The action is essentially one for alleged malpractice of defendants as certified public accountants. It is based partly on contract and partly on negligence. Count I is for the recovery of the 1952 federal taxes plus interest, alleged to have been lost through defendant's negligence, because any claim therefor was barred by the statute of limitations. Count II for the 1953 federal taxes, and count III for the 1952 California taxes are likewise based upon negligence. Counts IV, V, and VI are respectively for the same recovery, but based on alleged breach of contract.

1. *Findings and Evidence.*

Plaintiff conceded that defendants acted properly and without negligence in the preparation of each year's tax returns. She claims, however, that defendants breached an alleged duty to file protective claims for refund or to advise plaintiff to

do so through an attorney. Plaintiff contends that such a duty arises where a doubtful question exists with respect to whether or not payments are taxable income and that defendants knew, or should have known, that such doubtful question existed.

The court's findings on certain key questions of fact in the case, if supported, make consideration of most of the questions of law and of other findings raised by plaintiff immaterial. The findings on the key questions of fact are: (1) That defendants were employed to do the work on the basis of data, records, and information supplied by plaintiff, by her attorneys, and by others designated by her, without independent verification by defendants. (2) That plaintiff never disclosed the existence of the Hearst resolution to defendants and they did not learn of its existence until the bringing of this action. (3) That defendants understood that the McEnerney law firm was plaintiff's counsel in regard to the payments here involved. (4) That the care, skill and learning ordinarily possessed by certified public accountants in San Francisco did not require defendants to file or advise plaintiff to file claims for refund or require the accountants to make independent investigations; that it is the accepted standard of practice in San Francisco of certified public accountants engaged in income tax work in such a case as this to rely upon withholding statements (W-2 forms) issued by corporate payors as to taxable status of moneys so reported. (5) That plaintiff at no time protested to defendants that the Hearst payments were not taxable income.

As to (1) the evidence clearly shows that the agreement between plaintiff and defendants did not contemplate independent verification of the data received by defendants from plaintiff. As to (2) plaintiff concedes that at no time did she inform defendants of the Hearst resolution. As to (3) defendant Wood testified that it was his understanding that plaintiff was being advised by the McEnerney firm. The McEnerney firm was the attorney for Mrs. Lindner as executrix of her husband's estate and in all matters arising out of her husband's death including "these Hearst payments." The fact that plaintiff had Wood contact an employee of that firm justified such an assumption. There was no evidence that Wood was ever informed to the contrary. As to (4) there was expert evidence to the effect that certified public accountants in San Francisco rely upon the withholding forms unless the client indicates that he is not satisfied that the payments indicated thereon are taxable.

█ "[A]ccountants have been recognized as 'a skilled professional class . . . subject generally to the same rules of liability for negligence in the practice of their profession as are members of other skilled professions.' " (Hawkins, *Professional Negligence Liability of Public Accountants,* (1959) 12 Vanderbilt L. Rev. 797; see also Prosser on Torts, p. 132; Rest., Torts, § 299, com. d, p. 805.)

█ As members of a skilled profession they are experts. The duty of experts is well expressed in *Gagne* v. *Bertran* (1954) 43 Cal.2d 481, 489 [275 P.2d 15]: "The services of experts are sought because of their special skill. They have a duty to exercise the ordinary skill and competence of members of their profession, and a failure to discharge that duty will subject them to liability for negligence. █ Those who hire such persons are not justified in expecting infallibility, but can expect only reasonable care and competence. They purchase service, not insurance. [Citations.]"

It is conceded that the standards of care of accountants in this area ("the ordinary skill and competence" referred to in *Gagne, supra*) does not require in the absence of complaint by the client that the payment is not taxable, an independent investigation by the accountant, in a situation where, as here, the employer determines withholding to be necessary.

This brings us to (5): Did plaintiff so protest? As to this, plaintiff testified that on three occasions in the spring and summer of 1952 she protested that the payments did not constitute taxable income. Defendant Wood denied that she had so protested. He admitted that she had mentioned a certain case to him and asked whether it affected the taxability of the payments she was receiving. He looked up the case and found it dealt with a distinction between capital gain and ordinary income, and had nothing to do with the taxability or non-taxability of payments, and he so told her. It is contended that on cross-examination he appears to have hedged somewhat on his denial. █ However, it needs no citation of authority for the well known rule that in a conflict in the testimony of two witnesses this court is bound by the finding of the trial court.

Plaintiff contends that the court indirectly found that plaintiff did so protest. This contention is based upon the following: Defendants proposed a finding of fact to the effect that plaintiff never asserted to defendants that the Hearst payments were not taxable and never complained of McEnerney's advice, or the withholding of the tax or of defendants' treatment of

the payments as taxable. Plaintiff objected to this proposed finding and requested a specific finding "Whether or not plaintiff protested to defendant Wood in 1952 that the Hearst payments did not constitute taxable income to her." The court found: "At no time from February, 1953, when the first W-2 form herein was issued by Hearst, until the date of suit did the plaintiff ever protest to the defendant that the payments which were the subject of such withholdings were not subject to income tax." Additionally the court found: "At all times between April 1952 and April 1957, the plaintiff acquiesced in defendants' action and conduct as set forth above, and plaintiff never during said period nor prior to the filing of this suit in March 1959, objected to defendants of said actions and conduct. Defendants at all times prior to the filing of this suit relied upon the said acquiescence and said failure to object."

At first blush there appears to be some ambiguity or uncertainty between these two findings. ▆ It is the duty of this court to attempt to reconcile the ambiguities and uncertainties and to resolve them in favor of sustaining the judgment. (*Johndrow* v. *Thomas* (1947) 31 Cal.2d 202, 208 [187 P.2d 681], quoting from 24 Cal.Jur. 1007; see also *Vila* v. *Riolo* (1960) 183 Cal.App.2d 178, 180 [6 Cal.Rptr. 592]; and 2 Witkin, Cal. Procedure, Trial, § 111, p. 1841.) The finding first above was set forth in the final sentence of a finding dealing with the right of defendants to rely on the W-2 forms, and the corresponding absence of duty to undertake individual investigations. Taken in that context it is understandable why the sentence begins "At no time from February, 1953, when the first W-2 form herein was issued. . . ." It therefore cannot be considered an indirect finding that plaintiff did protest prior to that date. The second finding above set forth to the effect that "At all times between April 1952 and April 1957," plaintiff acquiesced in defendants' action and "never during said period . . . objected" is a definite finding adverse to plaintiff's testimony. The lack of objection to defendants' conduct found encompasses the lack of any protest regarding the tax status. ▆ Findings should be liberally construed so as to uphold the judgment. ▆ Thus, even if the duty of care included the duty to investigate after protest, the findings are that no protest was made.

Plaintiff concedes that if no protest was made to defendants, they were entitled to rely on Hearst's action in withholding and on the W-2 forms. As stated, the findings are supported.

There was the above mentioned testimony of Wood; plaintiff's testimony that she never showed a copy of the resolution to Wood; plaintiff's admitted failure to protest the taxability when the first W-2 form was received and in subsequent years; plaintiff's signing under oath the tax returns for the various years, which were accompanied by defendants' statements of no independent verification, and her failure to pursue the question of taxability with McEnerney.

## OTHER FINDINGS

The court found that had defendants known that payments were being made pursuant to the Hearst resolution, they would have had no more reason to believe that a doubtful question of law existed than without this information; that the solution of the question as to the taxability of the payments involved difficult and doubtful legal questions as opposed to simple or routine legal questions; that on the basis of decisions prior to 1952 and information furnished defendants by plaintiff, defendants did not know, nor should they have known, as certified public accountants, that there was any question of law as to the taxability of the payments. "Subsequent decisions indicating a more liberal attitude with respect to the taxability of such payments culminating in the promulgation of a more liberal policy announced by the Commissioner on August 25, 1958 did not impose any duty on defendants to recommend the filing of protective refund claims or the employment of an attorney prior to that date."

In view of the fact that the court found that defendants did not see the Hearst resolution and that defendants were entitled to rely on the W-2 forms, we deem it unnecessary to consider the evidence upon which the court made the above findings. They are immaterial and not necessary to the judgment. In view of the fact that defendants had no duty under the circumstances to inquire into the effect of the resolution or to act otherwise than they did, it is futile to inquire into what might have been the situation had the facts in the case been otherwise.

In view of the court's findings on failure of plaintiff to object to the withholding, we deem it unnecessary to consider the other questions raised by plaintiff, all of which are based upon the assumption that plaintiff did so object. Nor do we deem it necessary to discuss defendants' contention that the action is barred by the statute of limitations, a matter which the court, although asked to make a direct finding, did not include in its conclusions of law.

### 2. *Examination of Defendant Wood.*

 Plaintiff examined defendant Wood under section 2055 of the Code of Civil Procedure. Wood was asked, "Now, a CPA who prepared a return and computed the tax without familiarizing himself concerning the facts and the law to the end that the client's tax would be held to the amount legally due and no more would not be exercising the amount of learning and skill ordinarily exercised, would he?" The court sustained its own objection that the question called for the opinion and conclusion of the witness on the ultimate issue. Obviously this was a "loaded" question and did not take into consideration the real issue in the case, namely, whether or not defendants under the circumstances were entitled to rely on the W-2 forms.

Plaintiff asked several similar questions to which the court sustained objections. Finally, plaintiff asked the question, including in it the element of protest by the client. The question should have been permitted. However, the ruling sustaining an objection to it could not have been prejudicial for two reasons: one, the court then asked Wood what he conceived was the function of a certified public accountant employed to prepare a tax return, and Wood's answer covered the matter asked for in plaintiff's question; and secondly, the standard of care required of an accountant in this area was never in dispute.

The judgment is affirmed.

Sullivan, J., and Molinari, J., concurred.

A petition for a rehearing was denied January 4, 1963, and appellant's petition for a hearing by the Supreme Court was denied February 6, 1963.