[Civ. No. 58671. Second Dist., Div. Five. Feb. 27, 1981.]

DONALD R. O'CONNOR, Plaintiff and Appellant, v.
WILLIAM E. BLOOMER et al., Defendants and Respondents.

COUNSEL

Baird, Baird, Belgum & Buchanan and Stephen L. Belgum for Plaintiff and Appellant.

Bonne, Jones, Bridges, Mueller & O'Keefe and Jerrie S. Weiss for Defendants and Respondents.

OPINION

HASTINGS, J.—Donald R. O'Connor, plaintiff and appellant, appeals from a summary judgment rendered in favor of William E. Bloomer, M.D., and Marshall E. Redding, M.D., defendants and respondents.

On December 12, 1975, appellant underwent surgery for an aortic valve replacement at Memorial Hospital Medical Center of Long Beach. (Memorial Hospital.) Dr. Phillip Wright was the surgeon in charge of this procedure. Respondents assisted Dr. Wright in the surgery and acted exclusively under his direction and control.

Prior to surgery, Dr. Wright explained to appellant that there were two types of replacement valves which were available, the No. 29 Hancock (porcine) valve and the No. 29 Bjork Shiley valve. Appellant chose to have the Hancock valve inserted.

Dr. Wright commenced surgery and removed appellant's existing aortic valve. The container supposedly containing the Hancock valve was then opened but to everyone's surprise it was empty. After a brief investigation it was determined that the only available replacement valve was the Bjork Shiley valve. Dr. Wright made the decision to use this valve as a substitute valve and the surgery was completed.

Appellant alleged in his lawsuit for personal injuries against Memorial Hospital, Dr. Wright and respondents that he was damaged as a proximate result of this substitution because the Bjork Shiley valve was "outdated, inefficient and dangerous."

Memorial Hospital in its answers to interrogatories from appellant took full responsibility for the error.[1]

---

[1]Memorial Hospital explained the situation as follows: "On December 11, 1975, a Hancock Valve A.V.R. #29, serial #A 8706, was used in surgery on another patient at

Dr. Wright in his answer to appellant's interrogatories stated that respondents as assistant surgeons did not have any responsibilities whatsoever prior to surgery with regard to the valve and never came into contact with it. Their only responsibilities were to assist him at the time of surgery and he admitted that when the valve was discovered to be missing it was his responsibility to decide what to do. The only responsibilities respondents had according to Dr. Wright were to dissent or concur in his decision to use the replacement valve and both concurred.

Respondents brought the motion for summary judgment on the basis of their own declarations and the answers to interrogatories by Memorial Hospital and Dr. Wright contained in the points and authorities filed with the motion. The two declarations of respondents are quite similar. They state that throughout the surgery each was under the control and direction of Dr. Wright. Their only responsibility was to keep the operative area as free of blood as possible and to cut and tie sutures. Neither was responsible for ordering the Hancock valve and the first knowledge either had that the valve was missing was when the package turned out to be empty. Both declared that they had no responsibility as assistant surgeons in making decisions regarding the type of valve to be used or to insure its availability at the time of surgery. Each declaration concluded with a statement that the treatment rendered to the plaintiff by respondents did not fall below the standard of practice in the community nor did it proximately cause any injury to plaintiff.

Appellant's opposition to the motion for summary judgment contained only the declaration of his attorney Stephen L. Belgum. His declaration stated: "I indicated that I would propound interrogatories to

---

Memorial Hospital. Another valve was ordered, on that same date, to replenish the valve stock. It was to have been shipped out to the hospital that day. On the afternoon of December 11, 1975, the Clinical Physiology Department received Dr. Wright's request for a Hancock 29 valve for his patient, O'Connor. It was then that Mr. Nuttall ordered another valve and made arrangements with Hancock to pick up that valve himself the next morning and return it to the hospital in time for the O'Connor surgery. He did so because the valve ordered earlier would not have arrived in time for the O'Connor surgery. The next morning, Allan Bolstad, the perfusionist, in the Clinical Physiology Department, saw a Hancock 29 valve container on which the sterilization ring was intact and enveloped the lid. It was mistakenly assumed that this was the valve which Mr. Nuttall had ordered the day before and that it had arrived early. The intended trip to Hancock by Mr. Nuttall to pick up the valve for the O'Connor surgery was cancelled and Hancock was requested to ship another valve to maintain valve stock. In fact, the container seen by Allan Bolstad was empty. The valve which had been supplied with that container was valve #A 8706 which had been used in surgery on another patient on December 11, 1975."

Dr. Wright. If Dr. Wright in response accepted all responsibility, absolving Drs. Bloomer and Redding, then I indicated that I would dismiss as to Drs. Bloomer and Redding. [¶] Upon review of Dr. Wright's responses, I concluded that there was no clear cut acceptance of all responsibility. Therefore, no dismissal as to Drs. Bloomer and Redding has been filed. And, for the reasons out-lined in the memorandum of points and authorities, it is my opinion that the motion of Drs. Bloomer and Redding for summary judgment should be denied."

The trial court in granting the motion for summary judgment made the following observations from the bench: "The court is inclined to grant the motion. I really feel it's an area of expertise as to the duties of attending surgeons. [¶] They set it forth. They say what their responsibilities were, and certainly there is no violation of that, and on the other side, we don't have any conflicting testimony.... [¶] It would be a difficult situation if there was a declaration in opposition, just one declaration from another doctor who, in effect, would say they shared a responsibility, but there isn't anything."

▮ Appellant's first argument on appeal is that there is a triable issue of fact concerning respondents' responsibility in connection with the availability of the Hancock valve. Appellant in his opening brief states the issue as follows: "[T]he question here involves merely the responsibility for seeing that necessary equipment is available."

Although Memorial Hospital and Dr. Wright took full responsibility for the absence of the Hancock valve, appellant relies on the following interrogatory answer by Dr. Wright to contradict respondents' statements that it was not their responsibility to insure the availability of the valve at time of surgery. Interrogatories 13 and 26 asked Dr. Wright about the roles of Drs. Bloomer and Redding in the decision to substitute another valve. Dr. Wright answered as follows: "It was primarily the decision of Dr. Wright, however, as a member of the heart surgery team Dr. Bloomer has responsibility to dissent or concur in such decision. In this specific case he concurred." ▮ ▮▮ ▮ Dr. Wright also stated that Dr. Redding's role in this regard was "the same as Dr. Bloomer's role."[2]

---

[2]Appellant argues that Dr. Wright's answers to interrogatories are not evidence because they were not independently filed, but were found in the points and authorities filed with the motion for summary judgment. Appellant did not raise this objection below. But more important, appellant relied on Dr. Wright's answers before the trial court and this court in an attempt to prove that there was a triable issue of fact.

■ All this reply tells us is that respondents concurred in the use of the substitute aortic valve. It does not contradict the testimony of Memorial Hospital, Dr. Wright and their own that they had no responsibility to insure the availability of the Hancock valve at the time of surgery. As the court noted, there is absolutely no expert testimony by way of declaration, answer to interrogatories, etc. at the motion for summary judgment that would refute the hospital's statement or the expert testimony of the doctors themselves.

■ Appellant claims the court abused its discretion in granting the motion for summary judgment because it placed too much emphasis on the expert testimony of Dr. Wright and the respondents. He states the determination of whether there was a duty to check on the presence of the replacement aortic valve and whether that duty was negligently breached, can be made as a matter of common knowledge. No specialized medical testimony is required.

We disagree. The extent of the duties and responsibilities of assistant surgeons in a heart surgery is not a question that is within the common knowledge of laymen. Ordinarily expert evidence is essential to support an action for malpractice against a physician or surgeon. (See Annot. (1962) 81 A.L.R.2d 597, 601 and California cases cited therein.) The trial court quite properly considered the unchallenged expert testimony of Dr. Wright and respondents in ruling on the motion. Furthermore, there was the testimony of Memorial Hospital that was also unchallenged and quite conclusive.

■ The summary judgment procedure is designed to resolve causes of action where no triable issue exists as to any material fact. The declarations supporting the motion for summary judgment clearly proved that respondents had no responsibility concerning the availability of the Hancock valve.

(2) ■ Appellant contends the court erred in granting the motion for summary judgment because he had also pleaded the doctrine of res ipsa loquitur. To support this cause of action he states the evidence on record demonstrates that the problem occurred because of a mistake and negligence; that the defendants and respondents had control; and that appellant was unconscious and unable to contribute to the negligence. Appellant has paraphrased the three well known requirements for pleading res ipsa loquitur. (See *Ybarra* v. *Spangard* (1944) 25 Cal.2d 486 [154 P.2d 687, 162 A.L.R. 1258].) The second requirement

is that the accident must be caused by an agency or instrumentality within the defendant's exclusive control. The uncontradicted evidence supplied by respondents in their motion for summary judgment did conclusively prove that respondents had no responsibility or control over the availability of the Hancock valve. The trial court was correct in ruling that the res ipsa loquitur doctrine did not apply to respondents. It stated: "...but these gentlemen say they were not the chief surgeons, and they had limited participation, and it seems to me the law doesn't say that anybody that has participation at all is responsible for whatever happens. I think you are able to carve out areas of responsibilities, and they have done that here." In *Putensen v. Clay Adams, Inc.* (1970) 12 Cal.App.3d 1062 [91 Cal.Rptr. 319], the court upheld a nonsuit in favor of defendant, a manufacturer of surgical tubing, where there was evidence that it had been tampered with and weakened by someone at the hospital. The court said: "Adverting to the second condition [exclusive control] we observe that in dealing with the question whether it is more probable than not that the defendant's negligence caused the accident, it must be shown that the defendant had the management or control of the agency or instrumentality which caused the accident in order to eliminate the possibility that the accident was caused by someone other than the defendant. [Citations.]" (At p. 1075.) ■ Appellant in our present case maintains that all defendants must remain in the case and not be eliminated "one by one" in a piecemeal fashion when plaintiff has pleaded a prima facie case of res ipsa loquitur. We disagree. Certainly a defendant should not be required to stand trial with others when he can excise himself from the case by a successful motion for summary judgment. Justice and fair play demand such a result.

The summary judgment is affirmed.

Kaus, P. J., and Ashby, J., concurred.

A petition for a rehearing was denied March 18, 1981.