[No. S033331. Dec. 5, 1994.]

DARLENE FLOWERS, Plaintiff and Appellant, v.
TORRANCE MEMORIAL HOSPITAL MEDICAL CENTER et al.,
Defendants and Respondents.

## Counsel

Gittler & Wexler, Gittler, Wexler & Bradford, Harlan L. Bransky, Robert M. Moss and Ronald P. Kaplan for Plaintiff and Appellant.

Robert R. Huskinson, Horvitz & Levy, David M. Axelrad, S. Thomas Todd and David S. Ettinger for Defendants and Respondents.

Catherine I. Hanson and Gregory M. Abrams as Amici Curiae on behalf of Defendants and Respondents.

## Opinion

**ARABIAN, J.**—In this case, we consider the distinction between "ordinary" and "professional" negligence and conclude that with respect to questions of substantive law they comprise essentially one form of action. Apart from statutory considerations, characterizing misfeasance as one type of negligence or the other generally only serves to define the standard of care applicable to the defendant's conduct. Accordingly, we reverse the decision of the Court of Appeal holding that the same alleged breach of duty can give rise to distinct causes of action for "ordinary" as well as "professional" negligence.

### Factual and Procedural History

This case began Christmas Eve 1986 when plaintiff Darlene Flowers (plaintiff) was admitted to the emergency room of defendant Torrance Memorial Hospital Medical Center (the hospital) complaining of bladder pain. She was assisted onto a gurney by defendant Nurse Mary Elizabeth Osborne (Osborne) to await further medical attention, at which time Osborne raised only the far side railing. While awaiting treatment, plaintiff apparently fell asleep. When she awoke, she attempted to roll over but instead fell off the gurney and sustained injury to her back and arm.

Plaintiff subsequently filed suit against the hospital and Osborne (collectively, defendants) alleging causes of action for "general negligence" and

"premises liability." Defendants moved for summary judgment based on the declaration of their expert, who had extensive experience in emergency room practice in the general locale of the hospital. He stated that "[i]t is not and was not at the time of the accident the standard of practice in emergency rooms in this locality to necessarily put the rails up on gurneys for patients" such as plaintiff, who "was not elderly or confused, was not inebriated or medicated, was not a small child, and was not otherwise the kind of patient needing the rails put up. Furthermore, she was in considerable pain and not likely to fall asleep." Plaintiff countered with evidence from her own medical expert that the hospital's emergency room policy and procedure manual required "[b]oth side rails . . . to be up on a patient lying on a guerney [sic] . . . ." In response, defendants argued that plaintiff's witness had misinterpreted the policy and procedure manual, which did not so require, and that he had relied on a provision in an orientation packet applicable only to children.

The trial court granted summary judgment in favor of defendants after finding that the declaration of plaintiff's expert witness was defective in several respects. Hence, defendants' evidence as to the applicable standard as well as their exercise of due care stood unrebutted, and no triable issue of material fact remained as to their negligence. The court denied plaintiff's motion for reconsideration.

In a divided opinion, the Court of Appeal reversed. Although the majority agreed that defendants had negated any "professional negligence," they found the pleadings "broad enough to encompass a theory of liability for ordinary as well as professional negligence" because the manner of her injury did not involve a breach of duty to provide professional skill or care.[1] (See *Gopaul* v. *Herrick Memorial Hosp.* (1974) 38 Cal.App.3d 1002, 1007 [113 Cal.Rptr. 811]; see also *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 188 [98 Cal.Rptr. 837, 491 P.2d 421]; but see *Murillo* v. *Good Samaritan Hospital* (1979) 99 Cal.App.3d 50, 56-57 [160 Cal.Rptr. 33].) Relying in part on *Gopaul* v. *Herrick Memorial Hosp., supra,* 38 Cal.App.3d 1002, the court concluded that summary judgment was not proper in light of defendants' failure to address this alternative theory of liability. The dissenting justice disagreed that the pleadings or the facts raised any claim other than one for professional negligence.

## DISCUSSION

 The Court of Appeal majority erroneously premised their result on a perceived conceptual distinction between "ordinary" and "professional"

---

[1]The court considered plaintiff's allegations of premises liability "simply duplicative" of and therefore subsumed by her general negligence claims.

negligence, which in their view differentiates separate and independent theories of liability even when based on the same facts asserted by the same plaintiff. While this distinction may be relevant and necessary for purposes of statutory construction and application (cf. *Central Pathology Service Medical Clinic, Inc.* v. *Superior Court* (1992) 3 Cal.4th 181 [10 Cal.Rptr.2d 208, 832 P.2d 924] [construing "professional negligence" as used in Code Civ. Proc., § 425.13]), it is misplaced in resolving a motion for summary judgment in which the question is whether the moving party has demonstrated or negated negligence as a matter of law. In the latter context, the nature of the alleged breach of duty affects only the determination of the appropriate standard of care, which otherwise remains constant irrespective of the terminology used to characterize it.

"[N]egligence is conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm." (Rest.2d Torts, § 282.) Thus, as a general proposition one "is required to exercise the care that a person of ordinary prudence would exercise under the circumstances."[2] (*Polk* v. *City of Los Angeles* (1945) 26 Cal.2d 519, 525 [159 P.2d 931]; *Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]; see Civ. Code, § 1714, subd. (a).) Because application of this principle is inherently situational, the amount of care deemed reasonable in any particular case will vary, while at the same time the standard of conduct itself remains constant, i.e., due care commensurate with the risk posed by the conduct taking into consideration all relevant circumstances. (*Dalzell* v. *County of Los Angeles* (1948) 88 Cal.App.2d 271, 276 [198 P.2d 554]; *Lasater* v. *Oakland Scavenger Co.* (1945) 71 Cal.App.2d 217, 221 [162 P.2d 486].) " 'There are no "degrees" of care, as a matter of law; there are only different amounts of care, as a matter of fact . . . .' [Citation.]" (*Donnelly* v. *Southern Pacific Co.* (1941) 18 Cal.2d 863, 871 [118 P.2d 465].) "Persons dealing with dangerous instrumentalities involving great risk of harm must exercise a greater amount of care than persons acting in less responsible capacities, but the former are no more negligent than the latter for failing to exercise the required care. [Citation.]" (*Ibid.*; cf. *Polk* v. *City of Los Angeles, supra,* 26 Cal.2d at p. 535 [applying the same measure of the standard of care to the former rule of contributory negligence].)

With respect to professionals, their specialized education and training do not serve to impose an increased duty of care but rather are considered additional "circumstances" relevant to an overall assessment of what

---

[2]In some instances, statutory or decisional law may impose a standard of care higher than or different from "ordinary prudence." (See, e.g., Health & Saf. Code, § 3125 [duty to report fact of a person's infectious disease to local health officer].) The facts here do not implicate such an exception to the general rule; hence, we do not consider any variation in its application.

constitutes "ordinary prudence" in a particular situation. Thus, the standard for professionals is articulated in terms of exercising "the knowledge, skill and care ordinarily possessed and employed by members of the profession in good standing . . . ." (Prosser & Keeton, Torts (5th ed. 1984) The Reasonable Person, § 32, p. 187.) For example, the law " 'demands only that a physician or surgeon have the degree of learning and skill ordinarily possessed by practitioners of the medical profession in the same locality and that he [or she] exercise *ordinary care* in applying such learning and skill to the treatment of [the] patient.' [Citation.]" (*Huffman* v. *Lindquist* (1951) 37 Cal.2d 465, 473 [234 P.2d 34, 29 A.L.R.2d 485], italics added.) Similarly, a hospital's "business is caring for ill persons, and its conduct must be in accordance with that of a person of *ordinary prudence* under the circumstances, a vital part of those circumstances being the illness of the patient and incidents thereof." (*Rice* v. *California Lutheran Hospital* (1945) 27 Cal.2d 296, 302 [163 P.2d 860], italics added; see also, e.g., *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425, 438 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166] [psychotherapist "need only exercise 'that reasonable degree of skill, knowledge, and care ordinarily possessed and exercised by members of [that professional specialty] under similar circumstances.' "]; *Gambert* v. *Hart* (1872) 44 Cal. 542, 552 [same; attorneys]; *Stuart* v. *Crestview Mut. Water Co.* (1973) 34 Cal.App.3d 802, 811-812 [110 Cal.Rptr. 543] [same; engineers]; *Montijo* v. *Swift* (1963) 219 Cal.App.2d 351, 353 [33 Cal.Rptr. 133] [same; architects]; *Lindner* v. *Bartlow, Davis & Wood* (1962) 210 Cal.App.2d 660, 665 [27 Cal.Rptr. 101] [same; accountants].)

Since the standard of care remains constant in terms of "ordinary prudence," it is clear that denominating a cause of action as one for "professional negligence" does not transmute its underlying character. For substantive purposes, it merely serves to establish the basis by which "ordinary prudence" will be calculated and the defendant's conduct evaluated. Nor does it distinguish a claim separate and independent from some other form of negligence. As to any given defendant, only one standard of care obtains under a particular set of facts, even if the plaintiff attempts to articulate multiple or alternate theories of liability. (Cf. *Central Pathology Service Medical Clinic, Inc.* v. *Superior Court, supra,* 3 Cal.4th at p. 192; *Rowland* v. *Christian, supra,* 69 Cal.2d at pp. 119-120.)

Any distinction between "ordinary" and "professional" negligence has relevance primarily when the Legislature has statutorily modified, restricted, or otherwise conditioned some aspect of an action for malpractice not directly related to the elements of negligence itself. For example, the statute

of limitations for professional negligence against a health care provider can extend up to three years (Code Civ. Proc., § 340.5), in contrast to the one year applicable to ordinary negligence (Code Civ. Proc., § 340). (See also Code Civ. Proc., § 340.6 [setting limitations period for attorney malpractice at four years but shortening time if plaintiff discovers cause of injury sooner].) The Medical Injury Compensation Reform Act (MICRA) contains numerous provisions effecting substantial changes in negligence actions against health care providers, including a limitation on noneconomic damages (Civ. Code, § 3333.2), elimination of the collateral source rule as well as preclusion of subrogation in most instances (Civ. Code, § 3333.1), and authorization for periodic payments of future damages in excess of $50,000 (Code Civ. Proc., § 667.7). (See also Code Civ. Proc., § 425.13 [restricting claims for punitive damages in actions for professional negligence against health care providers].) While in each instance the statutory scheme has altered a significant aspect of claims for medical malpractice, such as the measure of the defendant's liability for damages or the admissibility of evidence, the fundamental substance of such actions on the issues of duty, standard of care, breach, and causation remains unaffected.

Two decisions by Courts of Appeal have addressed the question of whether a patient's fall from a hospital bed or gurney constituted "ordinary" or "professional" negligence. In *Gopaul* v. *Herrick Memorial Hosp., supra,* the court determined that " 'professional malpractice' was not involved" because "[t]he situation required no professional 'skill, prudence and diligence' " and "[t]he need to strap plaintiff to the gurney while she was ill and unattended would have been obvious to all." (38 Cal.App.3d at p. 1007.) In *Murillo* v. *Good Samaritan Hospital, supra,* the court reached a contrary conclusion, finding that the decision whether or not to raise the bedrails on the plaintiff's bed came within the defendant hospital's "duty 'to use reasonable care and diligence in safeguarding a patient committed to its charge [citations] and such care and diligence are measured by the capacity of the patient to care for himself.' [Citation.]" (99 Cal.App.3d at p. 55.)

In resolving this case, the Court of Appeal formulated the same dichotomy. However, the analysis in neither *Murillo* nor *Gopaul* is relevant here because both concerned the question of whether the defendant could raise a statute of limitations defense. Since the limitations period differed depending upon the characterization of the alleged negligence, the statutory distinction controlled the ultimate procedural viability of the plaintiff's cause of action. Nonetheless, having been imposed by the Legislature for reasons of policy, it could in no way alter the nature of the claim itself.

On a motion for summary judgment involving substantive law, the court does not confront a procedural differentiation but a more fundamental

definitional question. "A defendant is entitled to summary judgment if the record establishes as a matter of law that none of the plaintiff's asserted causes of action can prevail. [Citation.] To succeed, the defendant must conclusively negate a necessary element of the plaintiff's case, and demonstrate that under no hypothesis is there a material issue of fact that requires the process of a trial." (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46]; *Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785]; see Code Civ. Proc., § 437c.) At this stage of the proceedings, a claim of "professional" negligence has significance only to the extent it serves to identify any specialized knowledge or skill that may be a relevant "circumstance" in determining the standard of care by which the defendant's act or omission should be measured. However, as we have explained, whether the cause of action is denominated "ordinary" or "professional" negligence, or both, ultimately only a single standard can obtain under any given set of facts and any distinction is immaterial to resolving a motion for summary judgment.[3] If the evidence as to the requisite due care is uncontroverted, the trial court may properly address the question as a matter of law and proceed to a consideration of the defendant's alleged negligence. (See *O'Connor* v. *Bloomer* (1981) 116 Cal.App.3d 385, 391 [172 Cal.Rptr. 128].)

The Court of Appeal thus erred in finding plaintiff's pleadings "broad enough" to state a cause of action for ordinary negligence *as well as* professional negligence. This analysis necessarily implies that the same factual predicate can give rise to two independent obligations to exercise due care according to two different standards. But this is a legal impossibility: a defendant has only *one* duty, measured by *one* standard of care, under any given circumstances.

An additional analytical flaw, derived from the rationale of *Gopaul* v. *Herrick Memorial Hosp.*, *supra*, underlies the decision below. In drawing the distinction between ordinary and professional negligence, the court in *Gopaul* observed that "[t]he need to strap plaintiff to the gurney while she was ill and unattended would have been obvious to all." (38 Cal.App.3d at p. 1007.) In other words, it found that the circumstances did not require expert testimony to establish the appropriate standard of care. (*Ibid.*) This reasoning confuses the manner of proof by which negligence can or must be established and the character of the negligence itself, which does not depend upon any related evidentiary requirements.

---

[3]Because the need to draw a statutory distinction between ordinary and professional negligence is not presented on the facts of this case, we decline the urgings of amicus curiae to address that question as it relates to various provisions of MICRA.

■ In this regard, this court has on numerous occasions articulated the general rule applicable in negligence cases arising out of the rendering of professional services: " 'The standard of care against which the acts of a physician are to be measured is a matter peculiarly within the knowledge of experts; it presents the basic issue in a malpractice action and can only be proved by their testimony [citations], unless the conduct required by the particular circumstances is within the common knowledge of the layman.' [Citations.]" (*Landeros* v. *Flood* (1976) 17 Cal.3d 399, 410 [131 Cal.Rptr. 69, 551 P.2d 389, 97 A.L.R.3d 324], quoting *Sinz* v. *Owens* (1949) 33 Cal.2d 749, 753 [205 P.2d 3, 8 A.L.R.2d 757]; *Huffman* v. *Lindquist, supra,* 37 Cal.2d at p. 473.) The "common knowledge" exception is principally limited to situations in which the plaintiff can invoke the doctrine of res ipsa loquitur, i.e., when a layperson "is able to say as a matter of common knowledge and observation that the consequences of professional treatment were not such as ordinarily would have followed if due care had been exercised."[4] (*Engelking* v. *Carlson* (1939) 13 Cal.2d 216, 221 [88 P.2d 695], disapproved on other grounds in *Siverson* v. *Weber* (1962) 57 Cal.2d 834, 836-837 [22 Cal.Rptr. 337, 372 P.2d 97].) The classic example, of course, is the X-ray revealing a scalpel left in the patient's body following surgery. (See *Engelking* v. *Carlson, supra,* 13 Cal.2d at p. 221, and cases cited.) Otherwise, " 'expert evidence is conclusive and cannot be disregarded. [Citations.]' " (*Starr* v. *Mooslin* (1971) 14 Cal.App.3d 988, 999 [92 Cal.Rptr. 583], quoting *Lysick* v. *Walcom* (1968) 258 Cal.App.2d 136, 156 [65 Cal.Rptr. 406, 28 A.L.R.3d 368].) ■ Regardless of whether expert testimony is necessary, however, the standard remains constant, unaffected by the "ordinary" or "professional" nature of the proof upon which it rests.

In this case, the trial court granted summary judgment in favor of defendants based on their expert's testimony that prevailing standards did not require emergency room personnel to raise gurney side rails for patients like plaintiff whose condition did not appear to warrant this precaution. The Court of Appeal affirmed the ruling with respect to "professional" negligence but found the evidence insufficient to negate "ordinary" negligence. As we have explained, bifurcation of plaintiff's pleadings in this manner was erroneous. However, we are unable to determine whether this error may have affected the court's determination of the requisite standard of care and its analysis of the materiality of disputed facts.[5] Accordingly, we remand the

---

[4] This rule appears to be a corollary to the observation "you don't need a weatherman to know which way the wind blows." (Bob Dylan, *Subterranean Homesick Blues*, Bringing It All Back Home (Columbia Records 1965).)

[5] On review, plaintiff concedes that defendants' negligence was "professional," but argues that since "the standard of care may be proved *without* expert testimony, then it was error for

matter for further consideration of the trial court's action in light of the views expressed herein.[6]

DISPOSITION

The judgment of the Court of Appeal is reversed and the case is remanded for additional proceedings consistent with this opinion.

Lucas, C. J., Kennard, J., Baxter, J., George, J., and Werdegar, J., concurred.

**MOSK. J.,** Concurring and Dissenting.—I agree with the majority that there is no distinct cause of action for professional as opposed to ordinary negligence. I also agree with the majority inasmuch as the holding today does not alter the "common knowledge" exception to the usual rule that a plaintiff's medical malpractice action must be supported by some expert evidence as to the proper community standard of care. (See *Meier* v. *Ross General Hospital* (1968) 69 Cal.2d 420, 429-431 [71 Cal.Rptr. 903, 445 P.2d 519].) Nor do I take issue with the majority's deferral of the issue of whether or not the common knowledge exception applies in this case. (Maj. opn., *ante*, at p. 1001, fn. 5.)

I disagree, however, with the disposition of this case, because I believe the Court of Appeal was right in reversing the trial court's grant of summary judgment, albeit not for all the right reasons. Summary judgment should only be granted "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) As we have stated, "[s]ummary judgment is a drastic measure that deprives the losing party of a trial on the merits. [Citation.] It should therefore be used with caution, so that it does not become a substitute for trial. [Citation.] The affidavits of the moving party should be strictly construed, and those of the opponent liberally construed. [Citation.] Any doubts as to the propriety of granting the

---

the trial court to have granted summary judgment because of the insufficiency of her expert's declaration, and the Court of Appeal was correct in setting that summary judgment aside." In light of the disposition, we leave this contention and the determination of whether expert testimony is necessary or dispositive to the Court of Appeal to resolve in the first instance giving due consideration to our holding.

[6]Because the question is not squarely presented, we decline to resolve the conflict between *Murillo* v. *Good Samaritan Hospital, supra,* 99 Cal.App.3d 50, and *Gopaul* v. *Herrick Memorial Hosp., supra,* 38 Cal.App.3d 1002, on the question of whether a patient's fall from a hospital bed or gurney implicates "professional" or "ordinary" negligence in a statutory context. However, to the extent either decision may be inconsistent with the analysis herein, it is disapproved.

motion should be resolved in favor of the party opposing the motion." (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].) A review of the record in this case reveals that, under the above standard, the trial court clearly erred in granting defendant hospital's motion for summary judgment.

Plaintiff was in defendant's care, allegedly with bladder pain, when she fell from a gurney and injured herself. The question is whether defendant hospital's failure to put up both side rails on plaintiff's gurney falls below the proper standard of care. It is evident that this question is not one of great technical complexity. As with other standard of care issues, a trier of fact must ultimately weigh the evidence to determine the proper standard, and whether the hospital departed from it.

One piece of evidence highly relevant to the foregoing determination is the hospital's own policy statements on the appropriate medical procedures to be followed. Although such policy statements are not necessarily the definitive word on the community standard of care, they can be more reliable reflections of that standard than, for example, the declarations of expert witnesses: the former are forward-looking prescriptions of proper medical practice designed for the guidance of employees and staff, while the latter can be viewed as post hoc justifications of past behavior designed for use in litigation. Thus, even if this case does not fall within the "common knowledge" exception to the expert evidence rule, a hospital policy statement that contradicts the declarations of the hospital's own expert witnesses as to the proper standard of care may raise a triable issue of fact that cannot be resolved on summary judgment.

The record in this case reveals that, in opposition to the motion for summary judgment, plaintiff produced a document authored by defendant hospital entitled "Orientation to the Emergency Department" for its new emergency employees. The document stated as follows: "Both side rails are to be up on a patient lying on a gurney; both side rails are up on a child lying on a gurney." Defendant countered that the policy reflected in the above quoted passage applies only to children, but the plain language of the document belies that contention. Moreover, defendant contends that this "Orientation Packet" did not establish hospital policy; rather, a document called an "Emergency Policy and Procedures Manual" (Manual) was the hospital's official word on when side rails should be put upright. That Manual sets forth the various conditions under which side rails are to be raised, and plaintiff in her situation arguably did not meet those conditions. But the precedence of the Manual over the Orientation Packet in this case is

by no means obvious. It is clear from the text of the Manual that the side rail policy mentioned in that document refers to side rails on beds, and that, unlike the above quoted passage from the Orientation Packet, gurneys are never mentioned.

Defendant also produced two declarations to the effect that the community standard of care at the time did not necessarily include putting up both side rails on gurneys. One declaration was given by a nurse who was an employee of the hospital, the other by a doctor whose relationship to the hospital was unclear. Both statements are somewhat conclusory. In light of the hospital's own Orientation Packet, a reasonable trier of fact could legitimately view these declarations with skepticism.

Thus, in this case, there was at the very least a factual ambiguity as to the official hospital policy regarding side rails on gurneys. In fact, plaintiff's case was arguably stronger than that of defendant, for the document relied on by plaintiff was the only one to explicitly mention gurneys rather than beds, and therefore was the document that came the closest to governing plaintiff's situation. Although the trial court is required to strictly construe the moving party's documents, and liberally construe those of the opponent, here it did precisely the reverse.

Because there was a question of material fact regarding care pursuant to hospital safety policy, and therefore regarding the proper standard of care in plaintiff's situation, I would forego the needless exercise of remanding the case and uphold the Court of Appeal's reversal of the summary judgment.