[Civ. No. 15826. Second Dist., Div. Two. Nov. 26, 1947.]

FRANCES AGNEW, Appellant, v. CITY OF LOS ANGELES et al., Defendants; EDWIN LARSON, Respondent.

Cuthbert J. Scott for Appellant.

Harold B. Pool for Respondent.

McCOMB, J.—From a judgment in favor of defendant Larson, after trial before the court without a jury, predicated upon the granting of defendant's motion for nonsuit in a malpractice action, plaintiff appeals.

Considering, as we must in reviewing a judgment predicated upon the granting of a motion for nonsuit, the evidence in the light most favorable to plaintiff, the record discloses the following facts:

Plaintiff, a woman 51 years of age, on March 3, 1943, while walking west on Hollywood Boulevard in Los Angeles, slipped and fell, landing heavily on her right hip. She was assisted to the porch of an adjacent hotel and thereafter telephoned defendant Dr. Larson's office, but was informed that Dr. Larson was out of the city, and when plaintiff stated to the doctor's nurse that she had just had a bad fall she was advised to go to the Hollywood Receiving Hospital. This she did. She was examined by Dr. Gourson at the hospital and thereafter returned to her hotel by taxicab. Plaintiff was

assisted to her bed by a friend. During this period she suffered considerable pain. The following morning she again called defendant Larson and told him that she was waiting for him to come over and see her, to which he replied that he had received a report from the receiving hospital and that she was just bruised and it was not necessary for him to visit her; that he was too busy. He advised plaintiff to put a pillow under her knee and keep any strain off of her hip. He also prescribed anacin, rest and hot baths, and told her to call him the following morning.

The following day she telephoned defendant Larson and told him she was still in great pain and could hardly move. She stayed in bed during that day and on the following day, March 6, again telephoned Dr. Larson, telling him that she was in great pain, and asked him if he did not think he should come over and see her, to which he replied in the negative, stating that a bruise was often more painful than a break.

Plaintiff remained confined to her room until March 11, on which day, while leaning against a dressing table, her right ankle turned over and she heard her right hip bone crack. She then called the house physician, Dr. Skaletar, who caused her to be removed to the Cedars of Lebanon Hospital, where X-ray pictures were taken. She was later transferred to the California Hospital, where defendant Larson called in person to see her. She told him that the people at Cedars of Lebanon Hospital thought her hip was broken, but he still adhered to his original diagnosis.

On March 13, however, said defendant told plaintiff that he had examined the X-rays taken at the Cedars of Lebanon Hospital and that her hip was broken. Subsequently, additional X-rays were taken; plaintiff's leg was placed in a cast, and plaintiff was hospitalized for 12 weeks. Thereafter, she was permitted to move about on crutches and on August 12 she was permitted to use one crutch and a cane. In the latter part of October and early November plaintiff's knee commenced to hurt her and she complained of increasing pain in her hip. Doctor Larson told her that such trouble was not an unusual aftermath of a bone fracture; that continued activity and exercise would remedy the situation. In December further X-rays were taken and the doctor told plaintiff that she was not suffering from any necrosis but that her pain was caused by arthritis or neuritis. Plaintiff consulted several other physicians and finally instituted the present suit for malpractice.

This is the sole question for our determination:

*In view of the fact that there was no expert testimony that Dr. Larson had failed to use that degree of skill and learning ordinarily possessed by physicians of good standing practicing in the community where he resided, would the foregoing facts if believed by the trial judge make a prima facie case in favor of plaintiff sufficient to require the denial of defendant's motion for a nonsuit?*

This question must be answered in the affirmative.

■ *General Rule.* The law requires that a physician shall have that degree of skill and learning ordinarily possessed by physicians of good standing practicing in the same locality, and that he shall use the same care and diligence in applying that learning to the treatment of a patient. ■ It is likewise the general rule that whether he has done so in a particular case is a question for experts and can be established only by their testimony. (*Trindle* v. *Wheeler*, 23 Cal. 2d 330, 333 [143 P.2d 932].)

■ *General Exception.* To the above general rule there is this well-recognized exception, to wit, where the question of the propriety of the treatment is a matter of common knowledge of laymen, expert testimony is unnecessary in order to establish liability in a malpractice case.

■ *Specific Exception.* The use of the X-ray as an aid to diagnosis in cases of fracture or other indicated cases is a matter of common knowledge, and the failure to make use thereof in such a case amounts to a failure to use that degree of care and diligence ordinarily used by physicians of good standing practicing in this community. The court in the absence of expert testimony may take judicial notice of this fact. (*Rankin* v. *Mills*, 207 Cal. 438, 441 [278 P. 1044]; *Reynolds* v. *Struble*, 128 Cal.App. 716, 725 [18 P.2d 690]; *McCollum* v. *Barr*, 38 Cal.App. 411, 427 [176 P. 463]. See, also, *McBride* v. *Saylin*, 6 Cal.2d 134, 138 [56 P.2d 941].)

■ It is evident in the present case that when plaintiff fell a possible fracture was indicated, and under the foregoing rules it is likewise apparent that it was a matter of common knowledge, of which the trial court should have taken judicial notice that the ordinary physician of good standing in this community, in the exercise of ordinary care and diligence, would have had X-ray pictures taken of plaintiff's body when a fracture might have resulted from the fall. In failing to do so defendant did not exercise the degree of

learning and skill ordinarily possessed by physicians of good standing practicing in this community. Defendant Larson thus failed to use ordinary care and diligence in his treatment of plaintiff, with the result that plaintiff suffered personal injury. Therefore, the evidence which plaintiff introduced before the trial court established a prima facie case and it was error to grant defendant's motion for a nonsuit.

The judgment is reversed.

Moore, P. J., and Wilson, J., concurred.