[Civ. No. 21680.   Second Dist., Div. One.   Oct. 18, 1956.]

ALBERT LANDSBERG et al., Appellants, v. SYDNEY M. KOLODNY et al., Respondents.

Jerome L. Ehrlich, Samuel A. Rosenthal and Max Bergman for Appellants.

Bauder, Gilbert, Thompson & Kelly, Reed, Kirtland & Packard and Henry E. Kappler for Respondents.

DORAN, J.—The gist of the action is that the defendants negligently caused a mesh of cotton gauze, used and applied in the body of the plaintiff Bernice Landsberg during a child delivery, to become lodged and embedded in said plaintiff's abdomen. The gauze remained in the plaintiff's abdomen until removed by surgery some two years later. The term plaintiff, as hereinafter used, refers to the plaintiff Bernice Landsberg. Dr. Kolodny was the obstetrician employed by the plaintiff; the delivery took place at Queen of Angels Hospital where Dr. Kolodny was assisted by a resident physician, intern and nurses who were employees of the defendant hospital.

The plaintiff relied upon the doctrine of res ipsa loquitur, and after several days of trial before a jury, a 9 to 3 verdict was returned for the defendants. It is appellants' contention that the evidence is insufficient to support the verdict; that defendants' failure to explain the cause of the accident, "or to produce evidence of any measures to prevent such . . . occurrence," and particularly "defendants' gross negligence in not counting the sponges used during the delivery" leads to the conclusion that "plaintiffs prima facie case . . . has in no way been met or overcome by the defendants." Appellants make the further claim that "The verdict for the defendants is explainable only by the fact that the erroneous instructions by the trial court misled the jury."

On the morning of June 9, 1950, plaintiff entered Queen of Angels Hospital, and about 11:50 a. m. the baby's heart beats suddenly dropped from 120-160 to a low of 80 beats per minute, a condition requiring immediate delivery. Plaintiff was given a spinal anesthesia; the baby's head was found to be in an abnormal position requiring the use of forceps to rotate the head, resulting in certain lacerations. In order to facilitate delivery, Dr. Kolodny performed an episiotomy or incision to widen the vaginal canal, and to stop bleeding inserted a number of cotton gauze sponges, about 4 by 4 inches

square. There was testimony that a custom or usage existed in Class A hospitals not to count sponges used in child delivery, and that if not removed, such sponges would ordinarily be expelled through the natural opening. Such usage differs from that existing in surgery of other parts of the body where sponges would not be naturally expelled.

When the baby was born two loops of cord wrapped around its neck impeded breathing which was restored by artificial respiration. Shortly after delivery, plaintiff suddenly had a severe hemorrhage losing three or four pints of blood, indicating a failure of the uterus to contract normally; plaintiff's pulse rose, blood pressure dropped, and it was feared that the plaintiff would die on the table. After medicinal and other procedures failed to stop the bleeding, Dr. Kolodny packed the uterus with a 5-yard roll of gauze and then packed the vagina with a 3-yard length of gauze tied to the first roll, and the hemorrhage was then arrested.

More than two years later, an exploratory operation by another surgeon disclosed a large abscess in the abdominal cavity. Within the abscess was lodged "an irregular mass of disintegrating gauze mesh," measuring approximately 7 by 6 by about 3½ inches. A pathologist testified that it could not be determined whether the gauze found came from sponges or from a piece of packing. Plaintiff remained in the hospital from September 3, 1952, when the gauze was removed, until November 26, 1952.

On October 22, 1952 a second operation was performed during which plaintiff's spleen and three-quarters of the stomach were removed. Many blood transfusions were required, and a third remedial operation was performed on November 10, 1952. As stated in appellants' brief, "There was considerable difference of opinion . . . as to whether the second operation . . . and the third remedial operation were necessitated by the abscess and infection, resulting from the lodging of the gauze mesh in plaintiff's abdomen."

In the appellants' brief it is said: "we are mindful of the appellate principle that (1) an appellant who relies upon insufficiency of the evidence must point out the relevant evidence and the manner in which it is insufficient to support the judgment and (2) that all the evidence and its inferences must be viewed most favorably for the respondents." Viewing the record in the light of this principle it cannot be said that the verdict and judgment are without the support of substantial evidence.

Appellants' argument that under the res ipsa loquitur rule the jury was obliged to find for the plaintiffs in this case is untenable. As stated in respondents' brief, "while the doctrine of res ipsa loquitur may have applied against the defendant in the first place, there was sufficient evidence of due care, both explaining the occurrence and rebutting the inference of negligence." In the final analysis, the matter was one for the jury to determine, and since the verdict is supported by substantial evidence, there should be no appellate interference therewith.

In this connection it is to be noted that there were several theories as to how the gauze reached plaintiff's abdominal cavity. The plaintiff's experts suggested that in the packing process the fundus of the uterus was accidentally punctured and a portion of gauze was shoved through the opening. Another possible explanation was that one or more gauze sponges, used to wipe away bleeding caused by lacerations or incisions, passed through cervical or vaginal lacerations into the cul-de-sac close by and wandered into the abdomen. And, under either theory, or disregarding both explanations, the jury may have reached the conclusion that the occurrence was in the category of an unavoidable accident.

The emergency presented by plaintiff's condition, the excessive hemorrhage following delivery, engendering the fear that plaintiff was entering irreversible shock and would die on the table, has been previously noted, and was doubtless considered by the jury. As Dr. Holcombe, plaintiff's expert, testified, when a patient's life is in danger, "your No. 1 problem is to save that life . . . regardless of any other question." In such an emergency situation, the occurrence in question could be found entirely accidental. Another witness, Dr. Tolefson, who testified that it was not good practice to leave packing in the uterine cavity, distinguished between "something that may be intentionally done and something that may be unintentionally done under the stress of circumstances."

The record discloses evidence from which the jury could find that the defendants had satisfactorily explained the situation and had been sufficiently exculpated in respect to the charge of negligence. As said in the Kolodny brief, "A short reflection will show . . . that at times the only way in which a defendant can refute the inference of negligence is to show precisely what steps he used and then leave it to the jury

to decide whether ordinary care was exercised." This was the procedure followed in the instant case.

The appellants' complaint that certain instructions were erroneous and prejudicial is without substantial merit. The jury was told that in respect to the defendants' conduct, "you are not permitted to set up arbitrarily a standard of your own," and that "the only way you may properly learn that standard is through . . . expert witnesses." It appears that the plaintiffs, as well as the defendant Kolodny, had requested instructions that the doctor was obliged to use "the care ordinarily exercised in like cases by reputable members of his profession practicing in the same locality," etc. As stated by the respondent, "How could this standard of care and skill . . . be known to the jury unless it was testified to by other doctors who were the only ones in a position to know?"

The jury was likewise instructed that if "a condition arose calling for the exercise of defendant's best judgment in weighing the probable consequences of different methods which might be pursued," and if Dr. Kolodny "exercised his best judgment and used the skill and care ordinarily possessed and used by doctors in the same specialty practicing in the same locality, then you are instructed that defendant Kolodny would not be liable although you should believe from the evidence that the procedure followed by him was not the best procedure." In view of the evidence that an emergency arose requiring a quick "exercise of defendant's best judgment," the instruction was pertinent, and no prejudice resulted from the giving thereof.

The same may be said in reference to the court's instruction on the theory of unavoidable or inevitable accident, concluding with the statement that "Even if such accident could have been avoided by the exercise of exceptional foresight, skill or caution, still no one may be held liable for injuries resulting from it." Each party was entitled to have the jury instructed on each and every theory of the case which in this case included that of unavoidable accident.

The judgment is affirmed.

White, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied November 8, 1956, and appellants' petition for a hearing by the Supreme Court was denied December 12, 1956. Shenk, J., and Carter, J., were of the opinion that the petition should be granted.