Filed 9/2/15  Miah v. Obukhoff CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MOZOMIL MIAH,<br><br>   Plaintiff and Appellant,<br><br>  v.<br><br>SERGE OBUKHOFF,<br><br>   Defendant and Respondent. | B259501<br><br>(Los Angeles County<br>Super. Ct. No. BC500602) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Ernest Hiroshige.  Affirmed.

Law Offices of Amy Ghosh and Amy Ghosh for Plaintiff and Appellant.

Schmid & Voiles, Denise H. Greer and Michael V. Lamb for Defendant and Respondent.

Mozomil Miah (appellant) appeals from a judgment in favor of Serge Obukhoff, M.D. (respondent) entered after respondent successfully moved for summary judgment on appellant's claims of general negligence and professional negligence. We affirm.

## FACTUAL BACKGROUND

After injuring his back at work, appellant was referred to respondent, a neurosurgeon. Respondent's first consultation with appellant occurred on September 30, 2009. Respondent recommended surgery. However, appellant's insurance company would not authorize the surgery.

Appellant next saw respondent on July 13, 2011. Appellant complained of increased back pain and bilateral numbness and tingling in both legs. Respondent again recommended the same surgery. The surgery was authorized by appellant's insurance company on July 27, 2011.

The surgery took place on September 6, 2011, at Pacific Hospital of Long Beach. According to respondent's surgery report, the operation went well with no complications. Appellant was stable and tolerated physical therapy well. He was discharged on September 10, 2011, with instructions to see his surgeon and continue physical therapy.

On October 5, 2011, appellant was seen by respondent in his office. Appellant was ambulatory but still complaining of some pain going down his right leg and some back pain. The wound was healed. Respondent recommended daily home care and aquatic therapy twice a week for six weeks.

On October 17, 2011, appellant wrote respondent a letter describing ongoing postsurgical back pain and problems with daily activities. Appellant saw respondent in his office two days later. Respondent noted that appellant was ambulatory but was using a cane and complaining of some weakness in his legs. There were no abnormal findings upon examination. Appellant asked for additional home health care, which respondent recommended to help appellant through the recovery stage. Respondent noted that the wound was healed and appellant was recovering normally.

About five and a half weeks later, on November 30, 2011, appellant visited respondent at respondent's office. Appellant had a new superficial wound on his left side

"over the incision and paramedial area." Respondent noted that there had been no ongoing problems when he last saw appellant. Appellant indicated that about two weeks before the November 30, 2011 visit, he had noticed swelling and drainage from the area. Respondent's impression was that the infection may have entered the wound during aquatic therapy, and that it was likely a soft tissue infection. Respondent prescribed the antibiotic Keflex and arranged for skilled nursing care on a daily basis. Appellant was to return to his office in seven days.

Respondent next saw appellant on December 7, 2011. Respondent noted that the wound looked significantly better. There was a small area of infection, which respondent noted was most likely due to poor hygiene. Respondent also noted that appellant had left his home and was living in a car. Respondent was concerned that due to the situation it was difficult to provide good care for appellant. It would be imperative for appellant to have at least a temporary place to stay in order to be seen by a nurse on a daily basis.

Respondent noted that neurologically appellant was intact, he was ambulatory, and his pain was minimal. Respondent refilled appellant's pain medications and prescribed the antibiotic Levaquin to be taken for seven days. Respondent instructed appellant that in the event of deterioration he should return to the hospital.

Appellant was next seen by respondent in his office on January 4, 2012. Respondent noted that although the wound was dry with no drainage the last time he saw appellant, the drainage had returned to the wound. Respondent noted that appellant still had no place to live and was staying with a friend. The wound care nurse who was supposed to follow appellant was unable to find him. Respondent prescribed Cipro, and asked to see appellant again in one week. Respondent noted that the superficial wound on the left side had not closed, but appellant was neurologically stable. Respondent ordered a CT scan of the area where the surgery took place. The CT scan, taken on February 7, 2012, showed good alignment at the surgery site and good positioning of the hardware.

On February 8, 2012, appellant visited respondent for a follow-up. Appellant informed respondent that he had finally found a place to live. Appellant was complaining of some dizziness and tingling in his legs.

The wound had not fully healed. There was some remaining superficial wound infection. Respondent noted that appellant was not taking care of himself. Respondent noted, "He has a rather poor hygiene and did not replace the dressings and my feeling is that since he established his residence, we can actually make an arrangement which we tried to do earlier to get the wound care nurse to come and see him on a regular basis." Respondent noted that appellant was stable neurologically and fully ambulatory.

On February 22, 2012, respondent requested an inpatient hospital stay for appellant at Pacific Hospital of Long Beach due to wound infection. Respondent requested IV antibiotics and an evaluation of the infection. Upon admission, appellant was examined by Dr. Arvind Mehta. Dr. Mehta noted that the patient had some minimal drainage. He also noted that appellant had "very poor hygienic conditions and he has been scratching at that area." There was evidence of a small boil, which was dry with very minimal drainage. There was no evidence of any cellulitis.[1] Dr. Mehta found no evidence of any acute motor or sensory deficits.

Respondent also saw appellant on February 22, 2012, at Pacific Hospital of Long Beach. Respondent noted that appellant was fully ambulatory with some lower back pain and tingling in his left leg. He noted that the wound had a small opening with no apparent drainage and appeared to be healing. Respondent noted "no other signs of ongoing significant infection plus the patient again is fully ambulatory with some mild lower back pain, which is expected at this stage of recovery."

Respondent's last examination of appellant took place on February 29, 2012. Appellant was receiving IV medication and the wound was "practically healed." Respondent again noted a concern that the condition of the wound was related to poor hygiene or some related economic situation of the patient. There was no sign of deep

---

[1]     Cellulitis is a common infection of the skin and the soft tissues underneath. (See <http://www.webmd.com/cellulitis>.)

infection. His surgery was healing well, all hardware was in the right place, and there was no compression to the nerve roots. Although appellant was fully ambulatory, respondent noted that he was "very unhappy, always comes to my office and demanding things outside of the normal reasonable demands." Respondent noted:

> "The patient states that he has not had enough care, although this patient since the time of surgery has special social services going to his house, helping him and his family. As I stated before, at this point, I have nothing else to add to management of this patient. He will complete IV antibiotics he has been getting since last week and this is the third time he is getting antibiotics. Again, his wound is closed at this point, and based on the fact that how much trouble we are having with this patient, I will make an arrangement with his primary treating physician to switch to [*sic*] doctor."

## PROCEDURAL HISTORY

Appellant filed his complaint for professional negligence and general negligence against respondent on February 6, 2013. At the time, he was representing himself in pro. per. Respondent answered the complaint on March 15, 2013.

On July 24, 2013, appellant substituted in counsel to represent him.

On May 9, 2014, respondent filed his motion for summary judgment, which was accompanied by declarations of Igor Fineman, M.D., and Kathleen McColgan. Respondent also filed a separate statement of undisputed material facts and evidence in support of the motion for summary judgment.

The declaration from Dr. Fineman presented expert medical evidence in support of respondent's motion. Dr. Fineman stated that he, a board certified neurosurgeon, had reviewed appellant's medical records as well as appellant's deposition transcript and discovery responses. Dr. Fineman opined that respondent had complied with the standard of care in connection with the treatment of appellant and that there was no act or failure to act on the part of respondent which caused or contributed to any of appellant's alleged injuries to a reasonable degree of medical probability.

On July 9, 2014, appellant filed an opposition to respondent's motion for summary judgment, along with a statement of undisputed material facts and declarations of

5

appellant, appellant's wife, and appellant's attorney Amy Ghosh. Appellant failed to submit a medical expert declaration in support of his opposition. A hearing on the motion was set for July 24, 2014.

On July 24, 2014, the trial court granted respondent's motion for summary judgment. The trial court described respondent's expert declaration, noting that Dr. Fineman opined that respondent met the standard of care in all phases of his treatment of appellant. The court stated that based on Dr. Fineman's declaration, "[respondent] has met his moving burden of showing that no triable issue of material fact exists as to the professional negligence claim. Dr. Fineman's declaration establishes that [respondent] did not breach a professional duty of care and did not cause [appellant] any damages."

The trial court noted that appellant did not submit an expert declaration, did not request a continuance, and did not argue that he could, in fact, obtain a responsive expert declaration if permitted additional time. In response to appellant's argument that negligence was obvious in this case, the court stated that "the issues of breach of duty and causation in this case are beyond the common knowledge of a layperson."

As to the cause of action for general negligence, the trial court concluded: "[T]he evidence and allegations reflect that [appellant] and [respondent] never had any interaction except in the context of [appellant's] medical treatment. The general negligence claim arises from [respondent's] rendering of medical services and therefore is a claim for professional negligence. Accordingly, for the reasons stated above, no triable issue exists as to the second cause of action."

Appellant filed a notice of appeal on September 30, 2014.

## DISCUSSION

### I. Standard of review

The standard of review for an order granting or denying a motion for summary judgment is de novo. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 (*Aguilar*).) The trial court's stated reasons for granting summary relief are not binding on the reviewing court, which reviews the trial court's ruling, not its rationale. (*Kids' Universe v. In2Labs* (2002) 95 Cal.App.4th 870, 878.)

6

A party moving for summary judgment "bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar, supra*, 25 Cal.4th at p. 850, fn. omitted.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Ibid.*, fn. omitted.) "A defendant bears the burden of persuasion that 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' thereto. [Citation.]" (*Ibid.*)

Generally, "the party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact. . . . A prima facie showing is one that is sufficient to support the position of the party in question. [Citation.]" (*Aguilar, supra*, 25 Cal.4th at pp. 850-851, fn. omitted.)

## II. Respondent's prima facie showing

The elements of a cause of action for professional negligence are: "'"'(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence.' [Citation.]"' [Citation.]" (*Powell v. Kleinman* (2007) 151 Cal.App.4th 112, 122, citing *Hanson v. Grode* (1999) 76 Cal.App.4th 601, 606.) A plaintiff in a medical malpractice case must establish a violation of the standard of care through expert testimony. (*Flowers v. Torrance Memorial Hospital Center* (1994) 8 Cal.4th 992, 1001 (*Flowers*).) In the context of a summary judgment motion, "'[w]hen a defendant moves for summary judgment and supports his motion with expert declarations that his conduct fell within the community standard of care, he is entitled to summary judgment unless the plaintiff comes forward

7

with conflicting expert evidence.' [Citations.]" (*Munro v. Regents of the University of California* (1989) 215 Cal.App.3d 977, 984-985 (*Munro*).)

Here, respondent provided expert testimony in support of his summary judgment motion showing that his conduct fell within the community standard of care. Specifically, Dr. Fineman opined that respondent had complied with the standard of care in connection with the treatment of appellant and that there was no act or failure to act on the part of respondent which caused or contributed to any of appellant's alleged injuries to a reasonable degree of medical probability.

The burden thus shifted to appellant to come forward with conflicting expert evidence. (*Munro, supra*, 215 Cal.App.3d at pp. 984-985.)

## III.  Appellant failed to raise a triable issue of material fact

Appellant failed to provide a conflicting expert declaration. Instead, he provided his own declaration and the declaration of his wife. Appellant and his wife are not physicians and lack the qualifications to provide testimony as to whether respondent's actions fell within the applicable standard of care. Thus, appellant failed to raise a triable issue of material fact as to any alleged breach of duty by respondent, and respondent's motion for summary judgment was properly granted. (*Munro, supra*, 215 Cal.App.3d at pp. 984-985.)

### A.  Appellant's evidentiary objections to Dr. Fineman's expert testimony

Appellant makes extensive arguments on appeal as to the inadequacy of Dr. Fineman's expert opinion. He argues that Dr. Fineman's expert testimony lacks foundation, is biased, and is unsupported by sufficient explanation. However, appellant fails to provide a citation to the record indicating that he raised these points in the trial court.

Appellant was required to present his objections to respondent's expert evidence in the trial court, either in writing or at the hearing. (Cal. Rules of Court, rule 3.1352).[2]

_____

[2]     California Rules of Court, rule 3.1352 states:  "A party desiring to make objections to evidence in the papers on a motion for summary judgment must either:  [¶]

8

Because appellant has failed to demonstrate that he raised these issues in the trial court, we consider them forfeited on appeal. (*Superior Dispatch, Inc. v. Insurance Corp. of New York* (2010) 181 Cal.App.4th 175, 192-193 [failure to timely object to evidence presented on a summary judgment motion in the manner required by the California Rules of Court waives objections to the evidence]; *People v. Jenkins* (2000) 22 Cal.4th 900, 1000 [""[a]n appellate court will ordinarily not consider procedural defects or erroneous rulings . . . where an objection could have been, but was not presented to the lower court by some appropriate method"""].) Because there is no indication that appellant raised these issues in the trial court, or that the trial court considered or ruled upon them, we decline to consider them here.

### B. Exception where propriety of treatment is a matter of common knowledge

Appellant acknowledges that an expert opinion is generally required to establish breach of duty of care and causation in medical malpractice cases. However, appellant argues, there are exceptions to this rule. Specifically, where the question of the propriety of the treatment is a matter of common knowledge among laymen, expert testimony is unnecessary to establish liability in a malpractice case. Appellant argues that this case fits into that category.

In support of this argument, appellant cites only one case, *Agnew v. City of Los Angeles* (1947) 82 Cal.App.2d 616 (*Agnew*). In *Agnew*, a woman slipped and fell, injuring her hip. She called her doctor who was out of town. The following day, she called her doctor again and informed him "she was in great pain and could hardly move." (*Id.* at p. 618.) She telephoned him again the day after, and asked him if he did not think he should see her, and the doctor replied in the negative, stating that "a bruise was often more painful than a break." (*Ibid.*)

Approximately one week later, the woman suffered further injury, at which time she was taken to a hospital and x-rays were taken which revealed that her hip was broken. (*Agnew, supra*, 82 Cal.App.2d at p. 618.) The sole question before the Court of Appeal

<hr>

(1) Submit objections in writing under rule 3.1354; or [¶] (2) Make arrangements for a court reporter to be present at the hearing."

9

was whether the facts of the case set forth a prima facie case for malpractice given that there was no expert testimony that the doctor had failed to use that degree of skill and learning ordinarily possessed by physicians of good standing. (*Id.* at p. 619.) The *Angew* court answered this question in the affirmative. While acknowledging the general rule that expert testimony is required to establish medical malpractice, the court found a specific exception in this case because the use of X-ray as an aid to diagnosis is a matter of common knowledge. In *Agnew*, it was evident that "when plaintiff fell a possible fracture was indicated, and . . . it [was] likewise apparent that it was a matter of common knowledge . . . that the ordinary physician of good standing in this community . . . would have had X-ray pictures taken of plaintiff's body when a fracture might have resulted from the fall." (*Id.* at p. 619.)

As explained in *Agnew*, the common knowledge exception is a narrow exception to the general rule that expert testimony is required in cases involving medical treatment. This narrow exception applies only where "no scientific enlightenment is necessary because the topic is familiar to a layperson." (*Ewing v. Northridge Hospital Medical Center* (2004) 120 Cal.App.4th 1289, 1303, fn. omitted.) The "classic example" of the common knowledge exception is in cases where a foreign object, such as a sponge or surgical instrument, is left inside a patient following surgery. (*Flowers, supra*, 8 Cal.4th at p. 1001.) Under those circumstances, a layperson could use his or her common knowledge to conclude that this was not an ordinary consequence of surgery. (*Ibid.*)

The matter before us does not involve a physician's failure to take X-rays or a situation where a foreign object was left inside a patient following surgery. Instead, it involves the proper performance of back surgery and the proper treatment of a post-operative infection. [3] The trial court specifically found that "the issues of breach of duty

---

[3]     Appellant claims that there is a disputed fact about when appellant developed the post-operative infection. He states that the declaration of his wife, Dilruba Begum, indicates that the infection occurred a few weeks after surgery, not two months after surgery as set forth in respondent's medical notes. However, a review of Begum's declaration does not support this claim. There is no specific time frame noted as to when Begum observed a "watery substance" coming from the wound. In addition, there is no

and causation in this case are beyond the common knowledge of a layperson." The law cited above supports the trial court's conclusion, and appellant has failed to cite any legal authority suggesting that the trial court's conclusion was erroneous.[4]

## DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
CHAVEZ

We concur:



_____, P. J.
BOREN



_____, J.
ASHMANN-GERST

_____

reference to an infection nor any indication that Begum had the qualifications to diagnose an infection. Begum's declaration does not create a triable issue of material fact as to the date the infection began.

[4] Appellant's motion to augment records on appeal is denied. Appellant sought to augment the record with the entirety of Begum's declaration. However, the deposition in its entirety was not before the trial court at the time of the summary judgment motion. Because it was not before the trial court, and does not provide conflicting expert testimony, the deposition is not relevant to our decision.