Filed 4/21/16  Guzman v. Peckson CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MARTIN GUZMAN, | B264039 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC495839) |
| v. | |
| LOUELLA L. PECKSON et al., | |
| Defendants and Respondents. | |

APPEAL from judgments of the Superior Court of Los Angeles County. Robert L. Hess, Judge; Marc R. Marmaro, Judge; and Barbara A. Meiers, Judge. Affirmed.

Gary Rand, Suzanne E. Rand-Lewis, and Timothy Rand-Lewis, for Plaintiff and Appellant.

Law, Brandmeyer + Packer, Kent T. Brandmeyer and Paul M. Corson, for Defendants and Respondents Louella L. Peckson and Louella L. Peckson, M.D., Inc.

Doyle Schafer McMahon, Raymond J. McMahon and Elena Schionning, for Defendant and Respondent SynerMed, Inc.

\* \* \* \* \* \*

A doctor did not diagnose 19-year-old Martin Guzman (plaintiff) as having testicular cancer, causing a four-month delay before he was properly diagnosed with that condition. Plaintiff brought a variety of claims against the doctor as an individual, the doctor's corporate entity, and another company that performs administrative services for an independent practice association affiliated with the doctor's practice. The trial court sustained demurrers without leave to amend as to plaintiff's claims for intentional infliction of emotional distress, concealment, breach of fiduciary duty, and a violation of the Consumer Legal Rights Act (CLRA). The court then granted summary judgment on the remaining professional negligence claim against each defendant. Plaintiff appeals. Concluding there is no error, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

#### A. *Parties*

Plaintiff is a patient of Dr. Louella L. Peckson, whose corporate entity is Louella L. Peckson, M.D., Inc. (collectively, Dr. Peckson). Dr. Peckson is joined with other health care professionals in an independent practice group called Community Family Care Medical Group IPA, Inc. (IPA), which contracts with health care service plans to have IPA doctors provide health care services to those plans' subscribers and enrollees. IPA has a contract with an independent contractor, SynerMed, Inc. (SynerMed) to provide management and administrative services. Only plaintiff, Dr. Peckson, and SynerMed are parties to this appeal.

#### B. *Misdiagnosis*

On November 22, 2011, plaintiff and his mother visited Dr. Peckson regarding the bump on plaintiff's testicle that was causing him urgent and frequent pain. Plaintiff's mother informed Dr. Peckson that the family has a history of cancer—plaintiff's grandmother had breast cancer, a grandfather had prostate cancer, and an uncle had leukemia. Although plaintiff's mother requested a referral to a specialist, Dr. Peckson said that a specialist was not necessary as she diagnosed plaintiff with early epididymitis

2

(an inflammation of the tube at the back of the testicle) and prescribed ice, rest, proper underwear, and ibuprofen.

On January 4, 2012, plaintiff called Dr. Peckson seeking a referral to a specialist, and Dr. Peckson asked plaintiff to come in for a visit. On January 10, 2012, plaintiff saw Dr. Peckson again about the bump, which he said had grown. Dr. Peckson felt no mass, and prescribed a course of antibiotics and proper underwear. Dr. Peckson noted in her records that she would refer plaintiff to a urologist if the antibiotics did not abate the problem. However, plaintiff waited a month before filling the prescription for antibiotics.

On March 6, 2012, plaintiff visited another doctor regarding a rash on his hands, pain in his lumbar region, and the pain from his testicle. The second doctor prescribed a cream for the rash and advised plaintiff to follow up with Dr. Peckson, his primary physician, about the continued pain in his testicle.

On March 14, 2012, plaintiff saw Dr. Peckson as a follow-up about the rash on his hands. Although plaintiff testified during his deposition that he brought up the continued pain in his testicle, the medical records show no mention of any such discussion.

On April 24, 2012, plaintiff went to an emergency room and after several tests, he was diagnosed with metastatic left testicular cancer that had spread to his abdomen and left lung. He immediately underwent chemotherapy.

## II. Procedural History

Plaintiff sued Dr. Peckson and SynerMed (collectively, defendants), among others[1]. In the operative second amended complaint (SAC), plaintiff alleges six causes of action against the defendants involved in this appeal: (1) intentional infliction of emotional distress; (2) and (3) professional negligence (one claim against Dr. Peckson

---

[1] Plaintiff also brought causes of action against Jitendra N. Desai, IPA, Health Net of California, Inc., and UCLA Health System/U.C. Regents, but they are not parties to this appeal.

and her corporation and another against SynerMed); (4) concealment; (5) breach of fiduciary duty; and (6) a violation of CLRA, Civil Code section 1750 et seq.

Defendants demurred to all of the claims other than professional negligence. Dr. Peckson also filed a motion to strike. The trial court sustained the demurrers without leave to amend, and struck plaintiff's prayer for attorney's fees.

Defendants subsequently filed separate motions for summary judgment on the remaining professional negligence claims. Plaintiff filed no opposition. The trial court granted both motions.

Plaintiff timely appealed and challenges the orders sustaining both demurrers and granting both motions for summary judgment.

## DISCUSSION

### I. Demurrers

Plaintiff argues that the trial court erred in sustaining Dr. Peckson's and SynerMed's demurrers without leave to amend. We review an order sustaining a demurrer de novo, asking whether the operative complaint states facts sufficient to constitute the pertinent causes of action; in so doing, we accept all properly pled facts as true. (*Berg & Berg Enterprises, LLC v. Boyle* (2009) 178 Cal.App.4th 1020, 1034-1035.) We review an order denying leave to amend for an abuse of discretion, asking whether "there is a reasonable probability that the complaint could have been amended to cure the defect." (*Id.* at p. 1035.)

#### A. *Dr. Peckson's demurrer*

##### 1. Intentional infliction of emotional distress

To state a claim for intentional infliction of emotional distress, a plaintiff must plead "'(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.'" (*Wilson v. Hynek* (2012) 207 Cal.App.4th 999, 1009.)

4

Plaintiff has not sufficiently alleged the first element. To begin, the SAC does not allege that Dr. Peckson engaged in "extreme and outrageous conduct." The SAC alleges that Dr. Peckson (1) misdiagnosed plaintiff, (2) assured him he had nothing to worry about, and (3) "accused [him] of symptoms that were related to sexual activity" by asking him about his level of sexual activity while attempting to diagnose him. All three acts stem directly from Dr. Peckson's efforts to diagnose plaintiff's condition. This is not "outrageous" conduct: "Ordinarily, a medical diagnosis and treatment advice will not be considered outrageous unless they are false and given in bad faith." (*Berkley v. Dowds* (2007) 152 Cal.App.4th 518, 534; e.g., *Trear v. Sills* (1999) 69 Cal.App.4th 1341, 1357-1358 [false but good faith diagnosis of sexual abuse not outrageous]). Further, the SAC does not allege that Dr. Peckson misdiagnosed plaintiff in order to cause him emotional distress or in reckless disregard of that probability. Such an allegation is also necessary. (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050-1051 ["defendant's conduct must ""be intended to inflict injury or engaged in with the realization that injury will result"""].)

### 2. Concealment

To state a claim for concealment, a plaintiff must allege "'(1) concealment or suppression of a material fact; (2) by a defendant with a duty to disclose the fact to the plaintiff; (3) the defendant intended to defraud the plaintiff by intentionally concealing or suppressing the fact; (4) the plaintiff was unaware of the fact and would not have acted as he or she did if he or she had known of the concealed or suppressed fact; and (5) plaintiff sustained damage as a result of the concealment or suppression of the fact. [Citation.]'" (*Hambrick v. Healthcare Partners Medical Group, Inc.* (2015) 238 Cal.App.4th 124, 162; *Lovejoy v. AT&T Corp.* (2004) 119 Cal.App.4th 151, 157-158.) What is more, "[c]oncealment is a species of fraud, and '[f]raud must be pleaded with specificity.'" (*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, 878.)

The SAC does not state a claim for concealment for two reasons. First, plaintiff does not sufficiently allege the first element of concealment. The SAC alleges that Dr.

5

Peckson "actively and improperly concealed . . . that [she] would not capably provide and/or perform reasonable and necessary treatment," that she "would refuse treatment and/or necessary authorization or approval for treatment," and that she "would fail to refer Plaintiff to the appropriate specialist." The specific facts pled in support of these broad allegations detail how Dr. Peckson tried to properly diagnose plaintiff's condition, but got it wrong. The SAC does not allege any specific facts indicating that that Dr. Peckson *knowingly* concealed her own alleged incompetence, and this omission is fatal. (See *Khan v. Shiley* (1990) 217 Cal.App.3d 848, 857-857 ["elements of fraud" include "knowledge of falsity"]; cf. *Nelson v. Gaunt* (1981) 125 Cal.App.3d 623, 635-636 [physician knowingly misrepresents the nature and hazards of treatment; concealment claim proper].) Second, the specific facts plaintiff alleges do not indicate that Dr. Peckson intended to defraud plaintiff by suppressing her own alleged incompetence.

### 3. Breach of fiduciary duty

To state a claim for breach of fiduciary duty, a plaintiff must plead "(1) existence of a fiduciary duty, (2) breach of the fiduciary duty, and (3) damage proximately caused by the breach." (*Stanley v. Richmond* (1995) 35 Cal.App.4th 1070, 1086.)

The SAC does not sufficiently allege a claim for breach of fiduciary duty. Courts have thus far recognized a valid claim for breach of fiduciary duty against a physician only in certain instances, such as when the physician obtains the patient's consent to a medical procedure without disclosing "personal interests unrelated to the patient's health, whether research or economic, that may affect the physician's professional judgment." (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 131-132.) Plaintiff alleges that Dr. Peckson had a duty to "properly diagnose" his condition and to "disclose any and all potential problems, dangers, hazards and health risks inherently associated with his condition." This has nothing to do with informed consent, and this falls outside of the type of fiduciary duty recognized in *Moore*. Moreover, the SAC does not allege that Dr. Peckson *knew* of plaintiff's correct medical diagnosis. Without that knowledge,

6

Dr. Peckson could not have concealed that knowledge and thus could not have breached any fiduciary duty she may have owed plaintiff.

### 4. Violation of the Consumer Legal Remedies Act

The CLRA "declares numerous practices in the sale of goods or services to consumers to be unlawful" (*In re Vioxx Cases* (2009) 180 Cal.App.4th 116, 128), and authorizes consumers harmed by those practices to sue (*Massachusetts Mutual Life Ins. Co. v. Superior Court* (2002) 97 Cal.App.4th 1282, 1292). (See generally Civ. Code, § 1750 et seq.) The CLRA prohibits 27 unlawful practices related to goods and services. The SAC alleges that Dr. Peckson "held [herself] out as [a] preeminent medical provider[] providing excellent care" when this was not true. The SAC alleges this conduct constitutes nine different unlawful practices, but the conduct plaintiff alleges appears to violate, at most, two practices—namely, "[r]epresenting that . . . services are of a particular standard, quality, or grade, . . . if they are of another" (Civ. Code, § 1770, subd. (a)(7)), and "[a]dvertising . . . services with intent not to sell them as advertised" (§ 1770, subd. (a)(9)).[2] However, neither of these provisions is violated when the provider of the service is offering an "opinion about the quality of" the services rather than a "factual representation[]." (*Rutledge v. Hewlett-Packard Co.* (2015) 238 Cal.App.4th 1164, 1176; e.g., *Consumer Advocates v. Echostar Satellite Corp.* (2003)

---

[2] The other seven, less relevant practices plaintiff alleges are "[p]assing off goods or services as those of another" (Civ. Code, § 1770, subd. (a)(1)), "[m]isrepresenting the source, sponsorship, approval, or certification of goods or services" (§ 1770, subd. (a)(2)), "[m]isrepresenting the affiliation, connection, or association with, or certification by, another" (§ 1770, subd. (a)(3)), "[u]sing deceptive representations or designations of geographic origin in connection with goods or services' (§ 1770, subd. (a)((4)), "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have" (§ 1770, subd. (a)(5)), "[a]dvertising goods or services with intent not to supply reasonably expectable demand . . ." (§ 1770, subd. (a)(10)), and "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions" (§ 1770, subd. (a)(13)).

113 Cal.App.4th 1351, 1361-1362 [statements that a television system provided "'crystal clear digital video'" and "'CD-quality audio'" were nonactionable "boasts [and] all-but meaningless superlatives"].) In this case, the SAC alleges that Dr. Peckson held herself out as a "preeminent medical provider[]"; this is an opinion, not a factual representation, and thus is insufficient to state a claim under the CLRA.

## B. SynerMed's demurrer

The SAC alleges two bases of liability against SynerMed: (1) derivatively through Dr. Peckson, as her employer, agent and joint venturer as well as an entity that ratified her conduct; and (2) independently for its conduct in not allowing plaintiff to schedule an appointment to see Dr. Peckson in February 2012. The first basis for liability fails because, as noted above, the SAC does not state a valid claim on any of the four causes of action against Dr. Peckson directly. The second basis for liability fails because the act of not scheduling an appointment to see a doctor, without more, is not a basis for liability under theories of intentional infliction of emotional distress, concealment, breach of fiduciary duty or the CRLA.

## C. Leave to amend

Plaintiff does not propose any amendments to the SAC that would likely cure the defects identified above, and we independently do not see any.

## II. Summary Judgments

A party in a civil case is entitled to summary judgment if he can "show that there is no triable issue as to any material fact and that [he] is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) The party seeking summary judgment bears the initial burden of establishing that a cause of action has "no merit" by showing either that the opposing party cannot establish "[o]ne or more of the elements of [his] cause of action" or by showing a valid affirmative defense. (§ 437c, subds. (o) & (p)(2).) If this burden is met, and only if this burden is met, the "burden shifts" to the party opposing summary judgment "to show that a triable issue of one or more material facts exists as to that cause of action or [an affirmative] defense." (*Ibid.*; *Powell v. Kleinman*

8

(2007) 151 Cal.App.4th 112, 123 [court may not grant unopposed summary judgment motion unless moving party carries its initial burden]; *Harman v. Mono General Hospital* (1982) 131 Cal.App.3d 607, 613 [same].)  "'There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.'" (*Burgueno v. Regents of University of California* (2015) 243 Cal.App.4th 1052, 1057, quoting *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)  We review a trial court's grant of summary judgment de novo; what matters is the court's ruling, not its reasoning.  (*Burgueno*, at p. 1057.)

### A.     *Dr. Peckson's motion for summary judgment*

To prevail on a claim for medical malpractice, a plaintiff must prove "'(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence.' [Citation.]" (*Wise v. DLA Piper LLP (US)* (2013) 220 Cal.App.4th 1180, 1190.)  The trial court granted summary judgment for Dr. Peckson because it found no triable issue as to the second and third elements.

On the issue of whether Dr. Peckson provided substandard care to plaintiff, Dr. Peckson presented the declaration of Dr. Victoria I. Paterno.  Dr. Paterno is a board-certified pediatrician and has practiced in this area of medicine for 32 years.  After reviewing Dr. Peckson's records regarding plaintiff, the depositions of plaintiff and his mother, and resolving any conflicts between them in favor of the deposition testimony, Dr. Paterno opined that "Dr. Peckson complied with the applicable standard of care in all respects, and in every stage of her treatment of plaintiff."  More specifically, Dr. Paterno stated that Dr. Peckson conducted the "appropriate examination, evaluation and work-up" of plaintiff when they first met in November 2011.  Based on the complaints plaintiff voiced, Dr. Peckson's diagnosis that plaintiff was suffering from epididymitis rather than

9

testicular cancer was reasonable because (1) epididymitis is common among young males and manifests itself through the type of testicular pain plaintiff reported, and (2) testicular cancer is quite rare among otherwise healthy males like plaintiff, particularly when their families have no history of testicular cancer, and is "almost always painless." As a result, plaintiff's family history of *other* types of cancer was not relevant to Dr. Peckson's alleged misdiagnosis. Dr. Paterno also indicated that Dr. Peckson's decision, at the January 2012 appointment, to place plaintiff on a course of antibiotics, as a next step to eliminate infection as the culprit, was "appropriate and within the standard of care."

On the issue of causation, Dr. Peckson offered the declaration of Dr. Michael Van Scoy-Mosher. Dr. Van Scoy-Mosher is a board-certified oncologist with more than 41 years of practice as an oncology specialist. After reviewing Dr. Peckson's records as well as plaintiff's subsequent medical records, Dr. Van Scoy-Mosher opined that "nothing that Dr. Peckson did or failed to do [] in any way caused or contributed to any injury or damage to plaintiff." Based on the size of the mass surgically removed from plaintiff's testicle in April 2012, as well as the secondary symptoms plaintiff reported to Dr. Peckson in November 2011, Dr. Van Scoy-Mosher stated that plaintiff's cancer "had already spread to [his] abdominal area" by the time Dr. Peckson first met with plaintiff in November 2011, and that the four-month delay in the identification of the cancer and in the chemotherapy treatment due to Dr. Peckson's erroneous diagnosis "did not make any difference in plaintiff's staging, treatment, extent of disease, or prognosis."

Plaintiff makes three arguments in response. First, he argues that the declarations of Dr. Paterno and Dr. Van Scoy-Mosher are merely conclusory and lack any facts. We reject this argument because, as explained above, each declaration sets forth a factual basis for the expert's opinion. (Accord, *Bushling v. Fremont Medical Center* (2004) 117 Cal.App.4th 493, 509 [expert opinion that there was no malpractice based on review of "pertinent medical records" is "not an improper conclusion for an expert witness"].)

Second, plaintiff contends that Dr. Peckson violated California Rules of Court, rule 3.1350, subdivision (b), by making a motion for summary adjudication without

10

identifying the cause(s) of action at issue. This argument overlooks that, by the time of these motions, there was only one remaining cause of action; as a result, defendant's motion was for summary *judgment*, not summary *adjudication*. The rule does not apply.

Lastly, plaintiff asserts that two legal doctrines—the "common knowledge" doctrine and res ipsa loquitur—either negate Dr. Peckson's initial showing or sufficiently rebut it. We disagree.

### 1. "Common knowledge" doctrine

The "common knowledge" doctrine is a "limited," "narrow" exception to the general rule that expert testimony is needed to evaluate whether a doctor has engaged in medical malpractice. (*Scott v. Rayhrer* (2010) 185 Cal.App.4th 1535, 1542 (*Scott*).) Although "'the standard of care against which the acts of a physician are to be measured is a matter peculiarly within the knowledge of experts'" (*Landeros v. Flood* (1976) 17 Cal.3d 399, 410; *Flowers v. Torrance Memorial Hospital Medical Center* (1994) 8 Cal.4th 992, 1001 (*Flowers*) [expert testimony is ""'conclusive and cannot be disregarded'""]; *Willard v. Hagemeister* (1981) 121 Cal.App.3d 406, 412; see generally Evid. Code, § 801, subd. (a) [expert testimony appropriate when "(r)elated to a subject that is sufficiently beyond common experience"]), the "common knowledge exception applies"—and dispenses with the need for expert testimony—"if the medical facts are commonly susceptible of comprehension by a lay juror." (*Gannon v. Elliot* (1993) 19 Cal.App.4th 1, 7 (*Gannon*); *Friedman v. Dresel* (1956) 139 Cal.App.2d 333, 341 (*Friedman*).)

Over the years, courts have applied the common knowledge doctrine when (1) a foreign object is left inside the plaintiff's body after surgery by a defendant-physician without any possible medical justification (*Gannon*, *supra*, 19 Cal.App.4th at pp. 6-7 [collecting cases involving sponges and other surgical tools left inside the plaintiff's body during surgery]; cf. *Scott*, *supra*, 185 Cal.App.4th at pp. 1546-1547 [leaving Penrose drain device inside body was not done "inadvertently"; expert testimony needed]; *Landsberg v. Kolodny* (1956) 145 Cal.App.2d 158, 162 [same, as to gauze left in body as

11

part of emergency treatment]), (2) the plaintiff suffers injury to a part of her body unrelated to, but possibly caused by, a medical procedure undertaken by a defendant-physician (*Hurn v. Woods* (1982) 132 Cal.App.3d 896, 901-902 (*Hurn*) [collecting cases]; cf. *Cobbs v. Grant* (1972) 8 Cal.3d 229, 236-237 [injury to spleen after stomach surgery; expert testimony required]; *Elcome v. Chin* (2003) 110 Cal.App.4th 310, 317-318 (*Elcome*) [injury to neck and shoulder after surgery in pelvic area; expert testimony required]), (3) a defendant-physician operates on the wrong limb or part of the plaintiff's body (*Ewing v. Northern Hospital Medical Center* (2004) 120 Cal.App.4th 1289, 1303), (4) a defendant-physician does not seek an X-ray on a part of the plaintiff's body that was in pain after a fall (*Friedman*, *supra*, 139 Cal.App.2d at pp. 342-343; *Agnew v. Los Angeles* (1947) 82 Cal.App.2d 616, 619), and (5) a defendant-physician is accused of substandard treatment that is not medical in nature (*Meier v. Ross General Hospital* (1968) 69 Cal.2d 420, 427-430 [failure to ensure that windows of a suicidal patient's room could not open; no expert testimony needed]; *Massey v. Mercy Medical Center Redding* (2010) 180 Cal.App.4th 690, 695-696 [same, as to inadequate assistance in helping a plaintiff walk after leg surgery]).

This case involves none of these scenarios. Instead, it involves a doctor's failure to properly diagnose testicular cancer based on the symptoms that plaintiff exhibited. "Although cancer has become a relatively common condition, laymen have no basis for understanding the treatment or symptoms of that disease." (*Kerr v. Bock* (1971) 5 Cal.3d 321, 324.) Because "'the unknown and mysterious etiology of cancer' is beyond the experience of laymen and can only be explained through expert testimony" (*Jones v. Ortho Pharm. Corp.* (1985) 163 Cal.App.3d 396, 403), the common knowledge doctrine does not apply.

### 2. Res ipsa loquitur

"[W]here [an] accident is of such a nature that it can be said, in the light of past experience, that it probably was the result of negligence by someone that the defendant is probably the person who is responsible" (*Siverson v. Weber* (1962) 57 Cal.2d 834, 836),

the doctrine of res ipsa loquitur shifts the burden of proof to the defendant to disprove either negligence or causation. (*Elcome*, *supra*, 110 Cal.App.4th at p. 316.) Before this burden-shifting mechanism is triggered, the plaintiff has to show "(1) the injury must be the kind which ordinarily does not occur in the absence of someone's negligence; (2) the injury was caused by an instrumentality in the exclusive control of the defendant; and (3) the injury was not due to any voluntary action or contribution on the part of the plaintiff." (*Id.* at pp. 316-317; *Blackwell v. Hurst* (1996) 46 Cal.App.4th 939, 943.) This showing may be met with expert testimony or, where appropriate, by matters within the common knowledge of jurors. (*Siverson*, at p. 836; *Hurn*, *supra*, 132 Cal.App.3d at p. 901; *Tomei v. Henning* (1967) 67 Cal.2d 319, 322.) The doctrine of res ipsa loquitur is inapplicable here because, as explained above, the common knowledge doctrine is inapplicable and plaintiff otherwise offered no expert testimony. He consequently offers no evidence to trigger the presumption of res ipsa loquitur.

### B.     *SynerMed's motion for summary judgment*

As pled by plaintiff in the SAC, SynerMed's malpractice liability turns on (1) its vicarious liability for Dr. Peckson's negligence, and (2) its direct liability for its own malpractice. The trial court granted summary judgment for SynerMed after finding "no facts to support a theory of agency, ostensible agency, joint venture or vicarious liability"; concluding that statutory law *precludes* the imposition of any vicarious liability; and finding "no triable issues of fact" regarding SynerMed's own negligence.

We independently agree with the trial court's conclusions. SynerMed submitted its management services contract with IPA. That agreement specifies that IPA hired SynerMed as an independent contractor to handle provider agreements, billing and collections, claims administration, financial management, marketing, records maintenance and support services; the agreement specifically *prohibits* SynerMed from undertaking any tasks associated with the practice of medicine. SynerMed's executive vice president confirmed this delineation of responsibility. These uncontradicted facts negate plaintiff's allegations, in the SAC, that SynerMed employed Dr. Peckson, and

13

instead dictate a finding that SynerMed is not in any sense liable for Dr. Peckson's acts or omissions. What is more, Health and Safety Code section 1371.25 precludes a court from holding any health care service plan, or "any entity contracting with a plan," vicariously liable for the "acts or omissions" of others. (Health & Saf. Code, §§ 1371.25[3] & 1345, subd. (f)(1) [defining "health care service plan"]; see also *Watanabe v. California Physicians' Service* (2008) 169 Cal.App.4th 56, 63-64 [noting preclusion of vicarious liability].) Here, IPA was "an entity contracting with a plan" and SynerMed is one step further removed as an entity contracting with IPA. Thus, SynerMed cannot be liable for the acts or omissions of Dr. Peckson.

SynerMed is also not directly liable to plaintiff for refusing to schedule an appointment with Dr. Peckson in February 2012. SynerMed's executive vice president indicated that SynerMed "did not schedule appointments" for Dr. Peckson. Plaintiff also acknowledged in his deposition that he did not know whether the receptionist who refused to schedule an appointment with Dr. Peckson worked for SynerMed. The undisputed evidence thus precludes liability against SynerMed on this basis.

The doctrines of "common knowledge" and res ipsa loquitur are irrelevant to our above-stated analysis of plaintiff's claim against SynerMed.

---

**3** In full, Health and Safety Code section 1371.25 provides: "A plan, any entity contracting with a plan, and providers are each responsible for their own acts or omissions, and are not liable for the acts or omissions of, or the costs of defending, others. Any provision to the contrary in a contract with providers is void and unenforceable. Nothing in this section shall preclude a finding of liability on the part of a plan, any entity contracting with a plan, or a provider, based on the doctrines of equitable indemnity, comparative negligence, contribution, or other statutory or common law bases for liability."

**DISPOSITION**

The judgment is affirmed.  Dr. Peckson and SynerMed are entitled to costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.

HOFFSTADT

We concur:

_____, P.J.
BOREN

_____, J.
ASHMANN-GERST

15